PROVIDENT MUTUAL LIFE INSURANCE COMPANY OF PHILADELPHIA, Plaintiff,

v.

CITY OF ATLANTA, Defendant.

No. 1:93–CV–1341–RHH.

United States District Court, N.D. Georgia, Atlanta Division.

June 27, 1994.

Michael Weinstock, Alan Robert Heath, Weinstock & Scavo, Atlanta, GA, for plaintiff.

Charles George Hicks, Office of Atlanta City Atty., Atlanta, GA, for defendant.

## ORDER

ROBERT H. HALL, District Judge.

This case is before the Court on Defendant's Motion for Judgment on the Pleadings, or, in the alternative, Motion for Summary Judgment [19] and Defendant's Motion in Limine [20]. The Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Judgment on the Pleadings, or, in the alternative, Motion for Summary Judgment and GRANTS Defendant's Motion in Limine.

## BACKGROUND

Plaintiff owns 6.1 acres of property at 2459 Roosevelt Highway on which it uses three one-story office buildings for commercial purposes. Defendant is the owner, proprietor and operator of the William B. Hartsfield Atlanta International Airport (the "Airport"). Plaintiff's property is located near the Airport and is in the direct flight path of landing and departing aircraft.

Plaintiff alleges that due to Defendant's operation of the Airport, planes fly over Plaintiff's property frequently and at close proximity, subjecting the property to high levels of noise, dust, exhaust and vibrations. Plaintiff alleges that these overflights constitute a taking of its property without just compensation in violation of the Fifth Amendment to the United States Constitution. Complaint, Count I. Plaintiff also alleges that these overflights constitute a taking of its property without just compensation in violation of article I, section 3, paragraph 1 of the Georgia Constitution, and that this uncompensated taking gives rise to a cause of action for inverse condemnation. Id. at Count II. Plaintiff alleges further that the effects of the overflights constitute a continuing nuisance in violation of Georgia common law. Id. at Count III. In addition, Plaintiff alleges that the overflights constitute a continuing trespass in violation of Georgia common law. Id. at Count IV.

Defendant has established a Noise Abatement Program (the "Program") through which it purchases from willing owners single-family residential properties (but not commercial properties) located within a certain area surrounding the airport. Affidavit of Betty J. Hollaway (attached to Defendant's Motion for Summary Judgment as Exhibit B), ¶¶ 6, 9. Plaintiff alleges that it is similarly situated to these owners of single-family residential properties and that the Program's offer to purchase the single-family residential properties but not Plaintiff's commercial property constitutes a violation of article I, section 1, paragraph 2 of the Georgia Constitution (Equal Protection Clause)

and of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Complaint at Counts V, VI.

## DISCUSSION

### I. Standards of Review.

#### A. *Motion for Judgment on the Pleadings.*

Judgment on the pleadings is appropriate under Fed.R.Civ.P. 12(c) if all of the pleadings, including contracts and other documents incorporated therein, establish that the moving party is entitled to prevail as a matter of law. *Homart Dev. Co. v. Sigman,* 868 F.2d 1556, 1561 (11th Cir.1989); 2A James Wm. Moore, *Moore's Federal Practice,* ¶ 12.15 (1993). The Court may also take judicial notice of matters of public record. *United States v. Wood,* 925 F.2d 1580, 1582 (7th Cir.1991); *Louisiana ex rel. Guste v. United States,* 656 F.Supp. 1310, 1314 n. 6 (W.D.La.1986), *aff'd,* 832 F.2d 935 (5th Cir. 1987), *cert. denied,* 485 U.S. 1033, 108 S.Ct. 1592, 99 L.Ed.2d 907 (1988). A motion for judgment on the pleadings is subject to the same standard as is a Rule 12(b)(6) motion to dismiss. *Wood,* 925 F.2d at 1581–82; *Thomason v. Nachtrieb,* 888 F.2d 1202, 1204 (7th Cir.1989).

The Court, in consideration of a Rule 12(b)(6) motion, may look only at the pleadings. *See* Fed.R.Civ.P. 12(b). The Rule allows dismissal of a complaint which fails "to state a claim upon which relief can be granted." *Id.* When faced with a motion to dismiss under Rule 12(b)(6), the Court construes the complaint broadly, accepting all facts pleaded therein as true and viewing all inferences in a light most favorable to the plaintiff. *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1734, 12 L.Ed.2d 1030 (1964). Ultimately, "[a] motion for judgment on the pleadings must be sustained where undisputed facts appearing in the pleadings show that no relief can be granted." *United States v.*

*Yates,* 774 F.Supp. 1368, 1371 (M.D.Ga.1991) (citing *J.M. Blythe Motor Lines Corp. v. Blalock,* 310 F.2d 77 (5th Cir.1962)).

#### B. *Motion for Summary Judgment.*

This Court will entertain summary judgment motions "after adequate time for discovery and upon motion," *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), and will grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As a general proposition, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c)). However, the nature of the movant's responsibility varies depending on which party would bear at trial the burden of proof on the issue in question.

Where the legal issue as to which the facts in question pertain is one on which the non-movant would bear the burden of proof at trial, the movant must demonstrate that the non-movant lacks evidence to support an essential element of his or her claim on that issue. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–16 & n. 2 (11th Cir.1993). The movant need not support its motion with evidence *negating* the non-movant's claim; it "'simply may show[ ] —that is, point[ ] out to the district court—that there is an absence of evidence to support the non-moving party's case.'" *Id.* at 1115–1116 (quoting *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1438 (11th Cir.1991)).[1] "'Alternatively, the moving party may support its

---

1. This showing requires more than a simple statement that the non-moving party cannot meet its burden at trial. *Four Parcels,* 941 F.2d at 1438 n. 19. "Instead, the moving party must point to specific portions of the record in order to demonstrate that the non-moving party cannot meet its burden of proof at trial." *Id. Accord*

*Fitzpatrick,* 2 F.3d at 1116 n. 2 (stating that the Eleventh Circuit, in *Four Parcels,* largely resolved any confusion over "the nature of the showing required when the movant seeks to discharge [its] initial responsibility" by pointing out an absence of evidence).

motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial.'" *Id.* at 1116 (quoting *Four Parcels,* 941 F.2d at 1438).

Where the *movant* would bear the burden of proof at trial, it must demonstrate the absence of an issue of material fact with regard to every element essential to its claim on the legal issue in question. *Id.* at 1115. The movant in this position "'must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial.'" *Id.* (quoting *Four Parcels,* 941 F.2d at 1438).

Only after the movant meets its initial burden does any obligation on the part of the non-movant arise. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142 (1970); *Fitzpatrick,* 2 F.3d at 1116. Where the movant would bear the burden of proof at trial, the non-movant must present "evidence sufficient to call into question the inference created by the movant's evidence on the particular material fact." *Fitzpatrick,* 2 F.3d at 1116. The movant is then entitled to summary judgement only if, based on the combined evidence presented by the two parties, no reasonable jury could find for the non-movant. *Id.*

Where the non-movant would bear the burden of proof at trial, the manner in which the non-movant may rebut the movant's initial showing depends on the way in which the movant met its initial burden. If the movant put on evidence affirmatively negating the material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." *Id.* If the movant instead demonstrated an absence of evidence on the issue, the non-movant may respond in either of two ways:

> First, he or she may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an ab-

> sence of evidence. Second, he or she may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.

*Id.* at 1116–17.

All evidence and factual inferences should be viewed in the light most favorable to the non-movant. *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987); *Rollins v. Tech-South, Inc.,* 833 F.2d 1525, 1529 (11th Cir. 1987). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). An issue is not genuine if it is unsupported by evidence or is created by evidence that is "merely colorable" or "not significantly probative." *Id.* at 250, 106 S.Ct. at 2511. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the non-movant's case. *Id.* at 248, 106 S.Ct. at 2510.

## II. Defendant's Motion for Judgment on the Pleadings.

### A. *Plaintiff's Fifth Amendment Claim.*

Defendant contends that it is entitled to judgment on the pleadings on Plaintiff's Fifth Amendment takings claim (Count I) because Plaintiff did not exhaust available state-law remedies before filing the claim. Defendant argues that Georgia law provides a cause of action for inverse condemnation and that because Plaintiff did not pursue an inverse condemnation claim prior to filing its Fifth Amendment claim, it has not satisfied the prerequisites for maintaining a claim under 42 U.S.C. § 1983. Plaintiff responds by noting that the Supreme Court has refused to apply the exhaustion doctrine (i.e., the doctrine that a party must exhaust state-law procedures before pursuing relief through a federal-law cause of action) in many section 1983 cases because "the federal remedy is supplementary to the state remedy, and the

latter need not be first sought and refused before the federal one is invoked." *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961). Plaintiff argues that this precedent should apply to its Fifth Amendment claim.

■ At the core of the Fifth Amendment to the United States Constitution is the proposition that states are proscribed not from taking property but from taking property *without just compensation.* U.S. Const. amend. V; *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 & n. 13, 105 S.Ct. 3108, 3120 & n. 13, 87 L.Ed.2d 126 (1985). When a property owner insists that it is entitled to compensation for an alleged taking, it must utilize the procedures the state provides for obtaining such compensation before it may claim that it was "unjustly" compensated (or not compensated at all). *Williamson County Regional Planning Comm'n*, 473 U.S. at 194–97, 105 S.Ct. at 3120–22 (finding that because the plaintiff did not avail itself of Tennessee's law providing a cause of action for inverse condemnation, the Plaintiff's Fifth Amendment claim was not ripe); *East–Bibb Twiggs Neighborhood Ass'n v. Macon Bibb Planning & Zoning Comm'n*, 896 F.2d 1264, 1266 (11th Cir.1989) (finding that the plaintiffs were not entitled to maintain their Fifth Amendment claim because "they had not exhausted the *process* leading toward 'just compensation' because they failed to seek compensation through state law procedures." [emphasis in original, citation omitted] ). Even though a governing authority may "take" a property owner's property, the property owner does not sustain a Fifth Amendment injury until it fails to receive just compensation in a post-deprivation hearing.

■ Georgia law provides a procedure for obtaining compensation for the inverse condemnation of one's property. Ga. Const. art. I, § 3, ¶ 1; *Fountain v. Metro. Atlanta Rapid Transit Auth. (MARTA)*, 678 F.2d 1038, 1044 (11th Cir.1982); *Bernstein v. Holland*, 657 F.Supp. 233, 234 (M.D.Ga.1987); *Fulton County v. Baranan*, 240 Ga. 837, 838, 242 S.E.2d 617 (1978), *cert. denied*, 461 U.S. 929, 103 S.Ct. 2092, 77 L.Ed.2d 301 (1983). There

is no evidence or allegation before the Court that Plaintiff has filed an inverse condemnation claim in state court. Plaintiff *has* filed an inverse condemnation claim in federal court (i.e., Count II of Plaintiff's Complaint), but the Court did not rule on the claim before Plaintiff filed its Fifth Amendment claim. Because Plaintiff did not fully avail itself of the available process by which a party can compel payment of just compensation for taken property, and because when Plaintiff filed this claim it had yet to learn whether its inverse condemnation claim would result in just or unjust compensation (or no compensation at all), Plaintiff's Fifth Amendment claim is not ripe for adjudication. Accordingly, the Court dismisses Count I of Plaintiff's Complaint.

B. *Plaintiff's Claims for Punitive Damages.*

■ The awarding of punitive damages against a municipality is against public policy and impermissible as a matter of law. *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981); *MARTA v. Boswell*, 261 Ga. 427, 428, 405 S.E.2d 869 (1991). Accordingly, the Court finds that Plaintiff is not entitled to recover punitive damages from Defendant on any of its claims.

III. Defendant's Motion for Summary Judgment.

A. *Plaintiff's Inverse Condemnation Claim.*

■ Inverse condemnation is "a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency." *Jacksonville v. Schumann*, 167 So.2d 95, 98 (Fla.Dist.Ct.App. 1964), *cert. denied*, 172 So.2d 597 (Fla.1965). *See also City of Atlanta v. Donald*, 111 Ga. App. 339, 343, 141 S.E.2d 560 (1965) (adopting *Jacksonville v. Schumann's* definition), *rev'd on other grounds*, 221 Ga. 135, 143 S.E.2d 737 (1965). An action for inverse condemnation "forces a governmental body

to exercise its power of condemnation even though it may have no desire to do so." Marshall T. Bohannon, *Airport Easements,* 54 Va.L.Rev. 355, 373 (1968).

In the state of Georgia, a cause of action for inverse condemnation arises from the Georgia Constitution. *Powell v. Ledbetter Brothers, Inc.,* 251 Ga. 649, 650, 307 S.E.2d 663 (1983) (finding that when a governing authority takes a party's land but does not institute condemnation proceedings, "the injured citizen nonetheless has a right to compensation under the state constitution. A cause of action will lie.... Such an action has been called an 'inverse condemnation' action."), *overruled in other part by David Allen Co. v. Benton,* 260 Ga. 557, 398 S.E.2d 191 (1990). The constitutional provision that creates the cause of action is found at article I, section 3, paragraph 1, and provides that "private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid."

In *MARTA v. Trussell,* the Georgia Supreme Court held that although a governing body has the power to "take" property by eminent domain (after payment of just compensation), it's eminent domain power does not give it a right to "damage" property (even after paying just compensation for the damage) without first taking the property. 247 Ga. 148, 150, 273 S.E.2d 859 (1981). "We do not find that the people, in adopting the constitution, or the General Assembly, in enacting [Georgia's eminent domain legislation], intended to allow a public body to condemn the right to damage property without also taking a property interest." *Id.* at 151, 273 S.E.2d 859. If a governing authority wants to damage a property owner's property, it must first take the property and compensate the property owner for the taking, not just for the damage. *Id.* at 150, 151, 273 S.E.2d 859. If a governing authority damages the property but refuses to condemn and take it, the property owner may bring a damage suit in inverse condemnation under the Georgia Constitution. *Id.* at 151, 273 S.E.2d 859. *See also MARTA v. Gomez,* 261 Ga. 617, 618, 409 S.E.2d 35 (1991) (discussing *Trussell* ); *Duffield v. DeKalb County,* 242 Ga. 432, 433, 434, 249 S.E.2d 235 (1978) (finding that a party may maintain an inverse condemnation suit for damages arising from a nuisance and recognizing the plaintiff's inverse condemnation suit based on offending noise and odors).

In Count Two of its Complaint, Plaintiff alleges that Defendant has taken Plaintiff's property right in the airspace immediately adjacent to its property without prior just compensation in violation of article I, section 3, paragraph 1 of the Georgia Constitution. Complaint, ¶¶ 24, 26. Plaintiff also alleges that Defendant's operation of the airport effects a taking because "frequent, low altitude flights [create] an unreasonably large amount of · noise, dust, exhaust and vibration. *Id.* ¶¶ 25, 26.

Defendant asserts that Plaintiff is not entitled to maintain its inverse condemnation claim because it did not file its suit within the applicable statute of limitations time period. Defendant contends that the statute of limitations governing Plaintiff's inverse condemnation claim is O.C.G.A. § 9–3–30. O.C.G.A. § 9–3–30 is titled "Trespass or damage to realty" and provides: "All actions for trespass upon or damage to realty shall be brought within four years after the right of action accrues." Defendant argues that Plaintiff's cause of action accrued on the date on which the alleged taking occurred. Defendant then argues that the alleged taking occurred on May 31, 1985—the latest date on which an allegedly offending runway (i.e., Runway 27R) became operational in its newly extended condition. Affidavit of Maxwell W. Walker (appended to Defendant's Motion for Summary Judgment as Exhibit A), ¶ 4 (stating that Runway 27R became operational in its newly extended form in May 1985). Defendant supports its position by citing *United States v. Dow,* 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958), in which the Supreme Court found that the "date of taking" is "the date on which the Government entered and appropriated the property to public use." *Id.* at 23, 78 S.Ct. at 1045.

Plaintiff argues that O.C.G.A. § 9–3–30 does not govern its claim, but Plaintiff does not offer the Court an alternative statute of limitations. Plaintiff also argues that its cause of action does not (and will not) accrue "until Plaintiff [is] denied just compensation

for its property." Plaintiff's Response to Defendant's Motion for Summary Judgment [27], p. 15. Plaintiff then asserts that because Defendant's use of the air space above its property is a continuing nuisance, its cause of action accrues "on a daily basis." *Id.* at 16.

The parties agree that Defendant has not given Plaintiff any compensation for any alleged taking. The Court, therefore, is left to determine whether Defendant has taken Plaintiff's property; if so, when that taking occurred for purposes of establishing the date upon which Plaintiff's cause(s) of action accrued; and which statute of limitations governs Plaintiff's article I, section 3, paragraph 1 inverse condemnation claim.

### 1. *Statute of Limitations.*

Plaintiff's inverse condemnation claim is governed by the statute of limitations set forth at O.C.G.A. § 9-3-30. *City of Atlanta v. Starke,* 192 Ga.App. 267, 268, 384 S.E.2d 419 (1989); *Lawrence v. City of LaGrange,* 63 Ga.App. 587, 590, 11 S.E.2d 696 (1940). *Southern Ry. Co. v. Leonard,* 58 Ga.App. 574, 581, 199 S.E. 433 (1938); *City of LaFayette v. Hegwood,* 52 Ga.App. 168, 171, 182 S.E. 860 (1935). Because Plaintiff commenced this action on June 16, 1993, its cause(s) of action for inverse condemnation must have accrued after June 16, 1989.

### 2. *Plaintiff's Inverse Condemnation Claim Based on Physical Taking.*

 Unlike the Fifth Amendment to the United States Constitution, the Georgia Constitution requires that a governing authority give a property owner just compensation *before* taking or damaging its property. Ga. Const. art. I, § 3, ¶ 1. This distinction is important. A violation of the Fifth Amendment occurs only after a governing authority refuses to give a former property owner just compensation for its taken property—an event which may occur long after the governing authority actually "takes" the property

owner's property. In contrast, a violation of the Georgia Constitution occurs at the moment a governing authority "takes" the property without having given prior just compensation. In other words, the Georgia Constitution does not give a governing authority a grace period after an actual taking to decide whether to compensate a property owner.

Therefore, Plaintiff's argument that its cause of action does not accrue "until Plaintiff [is] denied just compensation for its property" is misleading. Although the denial of just compensation is a necessary element of an inverse condemnation claim under the Georgia Constitution, in such a claim, the denial is operative at the moment of the physical taking.[2] Thus, in determining whether Plaintiff filed its article I, section 3, paragraph 1 claim within the statute of limitations, the relevant time is the date upon which the taking occurred.

 The Court finds that if a physical taking occurred, it occurred before 1989 and has not occurred since. When a governing authority "takes" a property owner's property by having airplanes fly over it, the governing authority takes an "easement of flight." *United States v. Causby,* 328 U.S. 256, 261, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946); *Hoyle v. City of Charlotte,* 276 N.C. 292, 172 S.E.2d 1, 8 (1970); *Johnson v. City of Greeneville,* 222 Tenn. 260, 435 S.W.2d 476, 479 (1968); *Ackerman v. Port of Seattle,* 55 Wash.2d 400, 348 P.2d 664, 671 (1960), *overruled by Highline School Dist. v. Port of Seattle,* 87 Wash.2d 6, 548 P.2d 1085 (1976). When a governing authority initially acquires an easement, its doing so may constitute a taking. Each subsequent entry onto the property pursuant to that easement, however, does not constitute an additional taking of an easement; rather, it constitutes merely the use of an already-taken or already-acquired easement. *Avery v. United States,* 330 F.2d 640, 642, 643, 165 Ct.Cl. 357 (1964) (commenting that the taking of an easement occurs at one given time

---

**2.** Both cases that Plaintiff cites in support of its argument involve the timing of a denial of just compensation for Fifth Amendment claims rather than for state inverse condemnation claims. *See Miller v. Campbell County,* 945 F.2d 348, 352 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1174, 117 L.Ed.2d 419 (1992); *Del Monte Dunes at Monterey, Ltd. v. City of Monterey,* 920 F.2d 1496, 1500, 1506 (9th Cir.1990). The cases' discussions of post-deprivation refusals to compensate are correct, but inapposite.

and that a new taking occurs only if there is a change in the nature of the easement); *Jensen v. United States,* 305 F.2d 444, 446–47, 448, 158 Ct.Cl. 333 (1962) (same); *Hoyle,* 172 S.E.2d at 4, 11 (finding that the plaintiff's taking cause-of-action accrued on the month that commercial airlines first commenced operating jet aircraft at the airport and that the easement of flight was "taken" on a given date and "used continuously thereafter"). This conceptual distinction is basic black letter property law and explains why Plaintiff's cause of action accrued when Defendant last altered its use of Plaintiff's air space in a significant fashion.[3]

The question thus becomes, if Defendant took an easement of flight from Plaintiff, when did Defendant take it. The Court does not adopt Defendant's argument that the alleged taking occurred on the latest date on which an offending runway (Runway 27R) became operational in its newly extended condition (i.e., May 31, 1985). The nature of the easement of flight taken is determined not by the size or configuration of the structure from which the airplanes using the easement depart, but by the manner in which those airplanes actually use the easement. For example, if the airport's configuration had not changed since 1985, but the number of airplanes leaving the airport and using the easement significantly increased, or the way in which the airplanes departed and used the easement significantly changed, then the increase or change could effect a new taking of a different easement. This would be so despite the consistent size and shape of the airport. Thus, the easement is measured and defined by its nature and not by the nature of the structure from which those entities using the easement originate. *Starke,* 192 Ga.App. at 268, 384 S.E.2d 419 (recognizing the distinction between the two focal points).

Nonetheless, the Court finds that Defendant has meet its burden of showing that Plaintiff can present no probative evidence from which a reasonable fact finder could conclude there has been an increase in the frequency or character of flights over Plaintiff's property since June 16, 1989. Defendant has provided uncontroverted evidence that the Airport's structure has not changed since before June, 1989, and that the size and nature of the traffic surrounding the Airport has not increased or become more oppressive since before that date.

In paragraph 15 of its Statement of Material Facts as to Which There is No Genuine Issue to be Tried (appended to Defendant's Motion for Summary Judgment), Defendant states: "There has not been a significant increase or change in the type or frequency of aircraft operations at the Airport since January 1987. Affidavit of Andrew L. Bell." Bell's affidavit shows that since 1987, there has actually been a significant decrease in the amount of noise emitted by airplanes using the airport. Bell Affidavit (appended to Defendant's Motion for Summary Judgment as Exhibit C), ¶¶ 9, 11, 13 & Exhibits 1, 4–10. Defendant also states: "There has not been a change in flight patterns at the Airport since 1987." Defendant's Statement of Material Facts, ¶ 17 (citing Affidavit of Harry McIntyre). McIntyre's affidavit shows that there has been no change in flight patterns in and out of the Airport since February 1986. McIntyre Affidavit (appended to Defendant's Motion for Summary Judgment as Exhibit D), ¶¶ 1, 14.

Plaintiff does come forward with two affidavits which purport to present evidence to the contrary. Affidavit of Kenneth Gaines (appended to Plaintiff's Response to Defendant's Motion for Summary Judgment as Exhibit B), ¶ 11; Affidavit of Janice Sue Reaves (appended to Plaintiff's Response to Defendant's Motion for Summary Judgment as Exhibit D), ¶ 8. These affidavits are not significantly probative, however, as they merely relay general and strictly personal impressions of flight frequency and noise and fail to state the time period of these alleged increases with any precision. *See Anderson*

---

**3.** It also explains why if Defendant chooses in the future to significantly increase its use of, or significantly increase its imposition into, Plaintiff's air space, a court may deem it to have appropriated a new and different easement, thus giving rise to a new and distinct cause of action. *See Avery,* 330 F.2d at 642 (commenting that increased use of an airport may constitute "the taking of a new and more extensive avigation easement.").

*v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986) (discussing "merely colorable" and "not significantly probative" evidence).

Defendant has demonstrated that there has been no increase in the frequency of planes flying over Plaintiff's property or in the nature of the planes' use of the airspace over Plaintiff's property. Accordingly, the Court finds that if Plaintiff had a cause of action for inverse condemnation based on an uncompensated physical taking of its property, that cause of action accrued more than four years prior to the date on which Plaintiff filed this suit. The Court, therefore, grants Defendant's Motion for Summary Judgment against Plaintiff's inverse condemnation claim on this ground.

### 3. *Plaintiff's Inverse Condemnation Claim Based on Nuisance.*

 In defending its inverse condemnation claim against Defendant's motion, Plaintiff refers to the existence of a continuing nuisance as creating a cause of action that accrues on a daily basis. Plaintiff's Response, pp. 13–14. Where a nuisance disrupts a property owner's use and enjoyment of its property, the property owner may seek damages through a common law action for nuisance and/or through an inverse condemnation action, treating the nuisance as a taking. *Duffield v. DeKalb County,* 242 Ga. 432, 433, 249 S.E.2d 235 (1978). *See also City of Jacksonville v. Schumann,* 167 So.2d 95, 102 (Fla.Dist.Ct.App.1964) ("[A] continuing trespass or nuisance may ripen into a constitutional taking of property within the ken of constitutional provisions prohibiting the taking of property without the payment of just compensation."), *cert. denied,* 172 So.2d 597 (Fla.1965); *Thornburg v. Port of Portland,* 233 Or. 178, 376 P.2d 100, 105 (1962) ("A nuisance can be such an invasion of the rights of a possessor as to amount to a taking, in theory at least, any time a possessor is in fact ousted from the enjoyment of his land."). The Court will address Plaintiff's common law nuisance cause of action *infra.* Here, the Court addresses Plaintiff's inverse condemnation claim that Defendant's mainte-

nance of a nuisance constitutes a taking of Plaintiff's property.

 Georgia law does not recognize an ability to acquire a nuisance easement. *City Council of Augusta v. Lombard,* 101 Ga. 724, 728, 28 S.E. 994 (1897). Therefore, if a defendant effects a taking by maintaining a nuisance, a court must determine whether the taking occurred only once—at the nuisance's initiation—or again on other occasions subsequent to the nuisance's initiation. The Georgia Supreme Court instructs that, in determining whether a nuisance effects a taking after its initiation, courts should abide by the following rule:

> If the evidence shows ... that the extent of the nuisance has not increased, so as to amount to the additional taking of property or additional damages to the property owner inside the [statute of limitations] period, then plaintiffs are barred [from maintaining their takings cause of action]. On the other hand, if the nuisance occurs within or its extent is increased during the [statute of limitations] period so as to amount to an additional taking of property belonging to the plaintiffs, then that portion of the property taken during the twelve-month [statute of limitations] period would be actionable.

*Duffield,* 242 Ga. at 436, 249 S.E.2d 235. This rule creates an awkward jurisprudence. First, it is possible for a nuisance to satisfy simultaneously the rule's requirements for barring a cause of action and for maintaining one. In the instant case, for example, the offending flights occur continuously within the four-year statute of limitations period, but did not increase in number or effect. According to the rule's first sentence, because the alleged nuisance has not "increased" within the statute of limitations period, Plaintiff's inverse condemnation claim is barred. However, according to the rule's second sentence, because the alleged nuisance "occurred" within the statute of limitations time period, Plaintiff may maintain its cause of action.

 The second reason the *Duffield* rule creates an awkward jurisprudence is that it ignores the crucial distinction that has evolved in nuisance law between continuing

nuisances and permanent nuisances. In brief, when a nuisance is considered "permanent" (despite the fact that its offending effects are ongoing), a plaintiff must file its common law nuisance action within the four year period after the nuisance's initiation or the statute of limitations will bar the plaintiff's cause of action. If timely filed, however, an action against the operator of a permanent nuisance may secure both actual damages and prospective damages. In contrast, when a nuisance is considered "continuing," a plaintiff may file its common law nuisance action anytime within four years after *any* offending incident, even if the offending incident occurred more than four years after the nuisance's initiation. However, an action against the operator of a continuing nuisance may secure only actual damages incurred within the four years preceding the date upon which the action was filed. If courts interpret the *Duffield* rule in a way that does not respect this distinction, then plaintiffs whose actions against permanent nuisances are barred by O.C.G.A. 9–3–30 may simply relabel their actions as ones for takings based on nuisance and avoid entirely the effects of O.C.G.A. § 9–3–30.

Although the Court is unable to reconcile the first and second sentences of the *Duffield* rule, the Court can and does find that Georgia courts intend the rule to respect the distinction between continuing and permanent nuisances. Therefore, whether Defendant is entitled to summary judgment on Plaintiff's inverse condemnation claim based on Defendant's alleged operation of a nuisance will depend on whether the Court deems the alleged nuisance continuing or permanent.[4]

The distinction between a permanent nuisance and a continuing nuisance has been referred to as "one of the most baffling areas of the law." *Spain v. City of Cape Girardeau*, 484 S.W.2d 498, 503 (Mo.Ct.App.1972). Perusal of case law on the subject confirms the opinion enunciated by the editors of American Jurisprudence 2d that the distinction is "not always clearly delineated, and no short and all-inclusive rule or test has evolved." 58 Am Jur.2d *Nuisances* § 26, p. 688 (1989). Ultimately, the distinction a court employs seems to turn most often on how best to accomplish a desired result in a given case. *Spain*, 484 S.W.2d at 503–04; 58 Am Jur.2d, *Nuisances* § 26, p. 688.

No Georgia court has ever determined definitively whether a nuisance arising from an airport's operation (or, more specifically, from the Hartsfield Airport's operation) constitutes a permanent nuisance or a continuing nuisance. In *Scott v. Dudley*, 214 Ga. 565, 105 S.E.2d 752 (1958), the Georgia Supreme Court found that a defendant's operation of an airport created a continuing nuisance to a nearby property owner. *Id.* at 567, 105 S.E.2d 752. The Court, however, did not state *why* the nuisance was continuing rather than permanent. The court also made its finding in conjunction with a separate finding that the aviation activities carried on at the airport had increased gradually from the date of the airport's construction through the date of the court's decision. *Id.* at 566, 105 S.E.2d 752. Thus, it is possible that even if each nuisance was permanent in nature, the continuous increases in intensity created a series of new nuisances, and those occurring within four years of the filing date were actionable. It is difficult, therefore, to say whether the court found that an airport's nuisance is, as a general matter, continuing, or whether this specific airport's nuisances were continuing because the quality of its offending acts was continuously changing and growing. Reference to other Georgia decisions confirms this difficulty. *See, e.g., Camp v. Warrington*, 227 Ga. 674, 675, 182 S.E.2d 419 (1971) (commenting, without explanation and in a case not involving statute of limitations questions, that the construction, maintenance and operation of a yet-to-be-built airport "will constitute a continuing nuisance"); *Delta Air Corp. v. Kersey*, 193 Ga. 862, 869, 872, 20 S.E.2d 245 (1942) (finding, without explanation and in a case not involving statute of limitations questions, that the establishment, maintenance and operation of Atlanta's Candler Field Airport was a

---

**4.** The Court has found that there is no genuine issue that allegedly offending flights have occurred within the four-year period before Plaintiff filed its Complaint, but that the number and allegedly offending quality of those flights has not increased within that same time period.

"continuing nuisance"); *City of Atlanta v. Starke*, 192 Ga.App. 267, 268, 384 S.E.2d 419 (1989) (suggesting in dicta that the statute of limitations governing a nuisance claim against an airport begins running at the time of the nuisance's initiation). Without any clear precedent directly on point, the Court must look for guidance to general descriptions of the distinctions between the two types of nuisance.

One of the most-often cited explanations of the distinction is presented in *City Council of Augusta v. Lombard*, 101 Ga. 724, 28 S.E. 994 (1897):

> A nuisance, permanent and continuing in its character, the destruction or damage being at once complete upon the completion of the act by which the nuisance is created, gives but one right of action, which accrues immediately upon the creation of the nuisance.... *[The Town of] Troy v. Cheshire R.R. Co.*, 23 N.H. 83, [102–03 (1851) (involving a railroad whose construction entailed appropriation of a municipal bridge and obstruction and injury to a municipal highway) ]; *The Chicago & E.I. R.R. Co. v. McAuley*, 121 Ill. 160, [164–66, 11 N.E. 67 (1887) (involving the construction and operation of a railroad near the plaintiff's land, which subjected the plaintiff's land to vibrations and dust) ]; *Stodghill v. [The C.B. & Q. R.R. Co.]*, 53 Iowa 341, [344, 5 N.W. 495 (1880) (involving the damming of a stream, diverting the stream's flow away from the plaintiff's land) ].
>
> Where a nuisance is not permanent in its character, but is one which can and should be abated by the person erecting or maintaining it, every continuance of the nuisance is a fresh nuisance for which a fresh action will lie. [citation omitted]....
>
> . . . . .
>
> Where the structure, though permanent in its character, is not necessarily and of itself a permanent and continuing nuisance, but only becomes such in consequence of some supervening cause which produces special injury at different periods, a separate action lies for each injury thus occasioned.... So this court has held that recovery might be had for inju-

ries resulting from the erection and maintenance of a dam, in so far as such injuries occurred within four years preceding the bringing of the action, although the dam may have remained unchanged for twenty years. *Athens Mfg. Co. v. Rucker*, 80 Ga. 291, [294–95, 4 S.E. 885 (1887) ].

*Id.*, 101 Ga. at 727–28, 28 S.E. 994. *See also Mitchell v. City of Atlanta*, 217 Ga. 202, 204, 121 S.E.2d 764 (1961) (citing *Lombard* and contrasting permanent nonabatable nuisances with nonpermanent abatable nuisances); *Vickers v. City of Fitzgerald*, 216 Ga. 476, 481–82, 117 S.E.2d 316 (1960) (citing *Lombard* ); *Rowe v. Steve Allen & Assoc., Inc.*, 197 Ga.App. 452, 453, 398 S.E.2d 717 (1990) (same), *vacated on other grounds*, 402 S.E.2d 736 (Ga.1991). The court in *Lombard* found that the defendant city council's creation of a canal system which occasionally overflowed onto the plaintiff's land constituted a continuing nuisance, giving rise to a separate cause of action upon each overflowing. 101 Ga. at 729–30, 28 S.E. 994. Although the *Lombard* court provides some guidance for distinguishing between the two types of nuisance, its delineation of the distinction is vague and the potential for contradictory results is great. For example, reference to the *Lombard* court's explanation alone cannot explain why recurring vibrations and noise from a railroad's operation constitutes a permanent nuisances (*McAuley* ) while recurring flooding from a dam's operation constitutes a continuing nuisance (*Athens Mfg. Co.*).

In 1930, the Georgia Court of Appeals instructed that "[a] permanent nuisance is not necessarily one which can never, under any circumstances, be abated; but it is one whose character is such that, from its nature and under the circumstances of its existence it presumably will continue indefinitely." *Bainbridge Power Co. v. Ivey*, 41 Ga.App. 193, 193, 152 S.E. 306 (1930). Employing this focus on abatability, the court found that a reservoir that flooded the plaintiff's land was a permanent nuisance because abatement (i.e., dismantling the reservoir), while theoretically possible, would not be "feasible or practicable," would cause "great expense and inconvenience" for the owners, and

might not be fully successful. Again, however, the grounds for distinguishing this reservoir from the dam in *Athens Mfg. Co.* is not apparent in the opinion.

In a 1977 Opinion, the Georgia Supreme Court added further gloss to the distinction when it adopted section 930(1) of the Restatement of Torts which states:

> "Where, by the maintenance of a structure on his own land or by act and operations thereon, a person causes continuing or recurrent tortious invasions of the land of another, the other is entitled to recover for future violations if, and only if, it appears that (a) the situation will continue indefinitely and (b) it is incident to (i) an enterprise affected with a public interest, the operation of which as presently operated will not be enjoined, or (ii) other enterprises if the injured person so elects."

*Cox v. Cambridge Square Towne Houses, Inc.*, 239 Ga. 127, 128–29, 236 S.E.2d 73 (1977). This Restatement section allows recovery of prospective damages against operators of permanent nuisances—an unremarkable proposition. The *Cox* court, however, also adopted a sentence from comment d to section 899 of the Restatement (Second) of Torts which instructs that the statute of limitations in cases falling within the provisions of section 930 "does not run from the time of the first harm except as to the harm then caused." *Id.* After applying the Restatement, the *Cox* court found that a storm drainage system which increased the flow of surface water across the plaintiff's land met the requirements of section 930(1)(a), thus giving the plaintiff "the right to elect to treat the nuisance as temporary and sue for all those damages which have occurred within the past four years...." *Id.* at 129, 236 S.E.2d 73.

The *Cox* court's adoption of Restatement (Second) of Torts § 930 and of one sentence of comment d to Restatement (Second) of Torts § 899 is curious. As presented by the court, the adopted passages seem to negate application of O.C.G.A. § 9–3–30's limitations period to permanent nuisance suits in which the source of the nuisance is located outside of the plaintiff's property. As the discussion below will demonstrate, this construction is at odds with the policy behind the distinction between permanent and continuing nuisances, and it is at odds with numerous courts' applications of that distinction.

Courts in other states have also failed to provide satisfying explanations of the distinctions between the two types of nuisance. The most thorough discussion this Court has found of the distinction appears in a California Supreme Court opinion and dissent addressing facts very similar to those before this Court. In *Baker v. Burbank–Glendale–Pasadena Airport Authority*, 39 Cal.3d 862, 218 Cal.Rptr. 293, 705 P.2d 866 (1985), *cert. denied*, 475 U.S. 1017, 106 S.Ct. 1200, 89 L.Ed.2d 314 (1986), the California Supreme Court described California case law as establishing the following guideposts in distinguishing between permanent and continuing nuisances:

> On the one hand, permanent nuisances are of a type where by one act a permanent injury is done and damages are assessed once for all. The cases finding the nuisance complained of to be unquestionably permanent in nature have involved solid structures, such as a building encroaching upon the plaintiff's land, a steam railroad operating over plaintiff's land, or regrade of a street for a rail system. In such cases, plaintiffs ordinarily are required to bring one action for all past, present and future damage within [the time period established by the operative California statute of limitations] after the permanent nuisance is erected.... Damages are not dependent upon any subsequent use of the property but are complete when the nuisance comes into existence.

> On the other hand, if a nuisance is a use which may be discontinued at any time, it is considered continuing in character and persons harmed by it may bring successive actions for damages until the nuisance is abated. Recovery is limited, however, to actual injury suffered prior to commencement of each action....

> The classic example of a continuing nuisance is an ongoing or repeated disturbance, such as the one before us today, caused by noise, vibration or foul odor. Indeed, even more substantial physical in-

vasions of land have been held to be continuing in character. ... the distinction to be drawn is between encroachment of a permanent nature erected upon one's lands, and a complaint made, not of the location of the offending structures, but of the continuing use of such structures. The former are permanent, the latter is not.

In case of doubt as to the permanency of the injury the plaintiff may elect whether to treat a particular nuisance as permanent or continuing. *Spaulding v. Cameron*, 38 Cal.2d 265, 268, 239 P.2d 625 (1952). the importance of the plaintiff's election has long been recognized. *United States v. Dickinson*, 331 U.S. 745, 749, 67 S.Ct. 1382 [1385], 91 L.Ed. 1789 (1947).

*Baker*, 218 Cal.Rptr. at 297–98, 705 P.2d at 870–71 (citations, footnotes and internal quotations omitted). Applying these standards, the California Supreme Court found that "[a]irport operations are the quintessential continuing nuisance" and that the plaintiff could choose whether to treat the noise, vibrations and dust caused by an airport's operation as a continuing or as a permanent nuisance. *Id.* at 300, 705 P.2d at 873.

Commentators and other California courts have, for the most part, accepted without criticism, or followed, the *Baker* court's reasoning and findings. *See, e.g., Spar v. Pacific Bell*, 235 Cal.App.3d 1480, 1 Cal.Rptr.2d 480, 482 (1991), *review denied* (Cal.1992); *Field–Escandon v. DeMann*, 204 Cal.App.3d 228, 234, 251 Cal.Rptr. 49, 53 (1988); Christopher S. Marchese, *The Dormant Commerce Clause and Airport Noise: A Case for Narrow Judicial Review*, 44 Baylor L.Rev. 645, Westlaw page 5 (Fall, 1992); Pamela B. Stein, *The Price of Success: Mitigation and Litigation in Airport Growth*, 57 J. Air L. & Com. 513, Westlaw pages 14–16 (Winter, 1991) (Comment); Thomas W. Anderson & Pamela J. Rasmussen, *Recent Developments in Airport Law*, 22 Urb.Law. 899, Westlaw page 10 (Fall, 1990); *See also* 58 Am.Jur.2d, Nuisances §§ 26–31, pp. 688–93 (1989) (discussing the differences between permanent and continuous nuisances).

However, the five-justice majority opinion in *Baker* did incur a spirited dissent from Justice Mosk. Justice Mosk asserted that a court should construe as permanent any nuisance created by an airport's operation because the injurious activities (i.e., the airport's operation) are of a type that a court would not enjoin. *Baker*, 218 Cal.Rptr. at 301–02, 705 P.2d at 874–75 (Mosk, J., dissenting). In support of his position, Justice Mosk argued that public policy (and California law) prohibited courts from enjoining airport operations that comply with federal regulations and that rendering an airport susceptible to successive nuisance actions is undesirable. *Id.* at 301, 705 P.2d at 874. Justice Mosk also argued that California precedent allows a plaintiff to elect whether to treat a nuisance as continuing or permanent only if the defendant is not "privileged" to continue the nuisance; "privileged" being synonymous with the nuisance being "reasonably abatable." *Id.* at 301–04, n. 1, 705 P.2d at 874–87, n. 1. *See also Mangini v. Aerojet–General Corp.*, 230 Cal.App.3d 1125, 281 Cal.Rptr. 827, 840 (1991) (noting that the key distinction between the *Baker* majority and Justice Mosk's dissent is whether the airport's operations are enjoinable), *review denied* (Cal.1991); *Institoris v. City of Los Angeles*, 210 Cal.App.3d 10, 258 Cal.Rptr. 418, 423 (1989) (commenting that "questions have been raised about the correctness of" the *Baker* decision and citing Justice Mosk's dissent as authority), *review denied* (Cal. 1989).

Some Georgia courts have employed reasoning similar to Justice Mosk's in finding that an ongoing nuisance is permanent when it is unlikely to be abated or enjoined. *See, e.g., Fulton County v. Baranan*, 240 Ga. 837, 837, 242 S.E.2d 617 (1978) (suggesting that the key element in distinguishing between the two types of nuisance is abatability); *Bainbridge Power Co v. Ivey*, 41 Ga.App. 193, 193, 152 S.E. 306 (1930) ("A permanent nuisance is not necessarily one which can never, under any circumstances, be abated; but it is one whose character is such that, from its nature and under the circumstances of its existence, it presumably will continue indefinitely."). Courts in other states have also employed similar reasoning. *See, e.g., Reynolds Metals Co. v. Wand*, 308 F.2d 504, 508, 509 (9th Cir.1962) (finding that an alumi-

num plant's emission of gases and fumes constituted a permanent nuisance because it was unlikely that the emissions could be abated or enjoined); *City of Sioux Falls v. Miller,* 492 N.W.2d 116, 118–19 (S.D.1992) (finding that periodic flooding from a storm sewer system constituted a permanent nuisance because, *inter alia,* the system was unlikely to be enjoined due to its value to the community); *Racine v. Glendale Shooting Club, Inc.,* 755 S.W.2d 369, 374 (Mo.Ct.App. 1988) ("The distinguishing feature between a permanent and temporary nuisance is the 'abatability' of the nuisance."); *Frank v. Environmental Sanitation Management, Inc.,* 687 S.W.2d 876, 883 (Mo.1985) (finding that a nuisance is permanent "if abatement is impracticable or impossible"); *Spain v. City of Cape Girardeau,* 484 S.W.2d 498, 504 (Mo.Ct. App.1972) (commenting that a nuisance is "abatable" if it is "scientifically possible and reasonably practicable for the municipality to have abated the nuisance."); Dan B. Dobbs, *Law of Remedies* § 5.4, p. 338 (1973) ("In [deciding whether a nuisance is continuing or permanent], courts have apparently considered several factors: (1) is the source of the invasion physically permanent, i.e., is it likely, in the nature of things, to remain indefinitely? (2) is the source of the invasion the kind of thing an equity court would refuse to abate by injunction because of its value to the community or because of relations between the parties? (3) which party seeks the permanent or prospective measures of damages?"). *See also Moy v. Bell,* 46 Md.App. 364, 416 A.2d 289, 294 (1980) (commenting that because "any nuisance man creates, man can abate," the appropriate question is what is the *likelihood* of abatement).

Ultimately, no clear rule exists in Georgia or elsewhere for distinguishing in specific cases between continuing and permanent nuisances. Although this Court finds Justice Mosk's argument compelling, the Court cannot conclude that Georgia has adopted it as its own. Left with equally viable and equally wanting options, the Court believes that the proper response is to employ the default position of allowing Plaintiff to chose how it wishes to construe Defendant's alleged nuisance. *See Baker,* 218 Cal.Rptr. at 297–98, 705 P.2d at 870–71. Accordingly, the Court finds that Plaintiff has alleged a cause of action for continuing nuisance and that because the alleged nuisance occurred within the four years preceding the date on which Plaintiff filed its suit, Defendant is not entitled to summary judgment on this claim.

### B. *Plaintiff's Nuisance Claim.*

■ Plaintiff contends that the flights over its property constitute a nuisance for which it may recover common law tort damages. In moving for summary judgment, Defendant responds with two separate arguments. Defendant argues first that because the airport was properly constructed and is properly operated, it cannot be adjudged a nuisance. *See Central Georgia Power Co. v. Ham,* 139 Ga. 569, 573, 77 S.E. 396, 398 (1913) ("As [the offending structures] were located and constructed by authority of law, they cannot be adjudged a nuisance if constructed and operated in a proper manner."). Second, Defendant argues that the statute of limitations has expired for Plaintiff's nuisance claim. Defendant's second argument assumes two facts. First, that the applicable statute of limitations is O.C.G.A. § 9–3–30, which establishes a four-year limitations period. Second, that if the airport (and its operation) is a nuisance, it is a "permanent" nuisance rather than a "continuing" nuisance. As a result, Defendant argues, Plaintiff's nuisance cause of action (if it had one) accrued only once, on the day of the nuisance's initiation, rather than each and every time Plaintiff was disturbed in the use and enjoyment of its property by planes flying overhead. *See Smith v. Dallas Utility Co.,* 27 Ga.App. 22, 24, 107 S.E. 381 (1921) ("[E]very continuance of a nuisance not permanent and which can and should be abated is a fresh nuisance for which a new action will lie."). Because the Court has already found that Plaintiff may construe Defendant's alleged nuisance as a continuing nuisance, Defendant's second argument must fail. The Court, therefore, must consider whether Defendant's allegedly proper construction and operation of the airport precludes an action for nuisance.

In support of its argument that it properly constructed and properly operates the airport, Defendant cites evidence in the record

that demonstrates the airport's construction met federal requirements. *See* Defendant's Motion for Summary Judgment, pp. 21–22. Defendant's evidence is silent, however, on the propriety of its operation of the airport. Defendant also presents no argument or evidence that low-altitude flights are "unnecessary" (and, therefore, the product of the airlines' decisionmaking rather than Defendant's construction and operation of the airport). *See Chronister v. City of Atlanta,* 99 Ga.App. 447, 452, 108 S.E.2d 731 (1959) (finding that an airport owner may be held liable for a nuisance caused by airplanes' use of an airport where the owner constructs or maintains the airport in such a way as to make the nuisance unavoidable).

Plaintiff argues that it is Defendant's operation of the airport, rather than the airport's construction, that creates the nuisance. The Court finds that Defendant has not carried its burden of showing that Plaintiff lacks evidence that Defendant did not properly operate the airport or that Defendant is not responsible for the allegedly offensive nature of the overflights. *See id.* (finding that a properly constructed airport may still constitute a nuisance by the way in which it is operated). *See also City of Atlanta v. Donald,* 111 Ga.App. 339, 343, 141 S.E.2d 560 (1965) (finding that a cause of action for nuisance similar to that asserted by Plaintiff here, exists where the plaintiff alleges that a defendant-city owns and controls the airport and that the offending nature of the overflights are "necessary" (i.e., unavoidable because of the design of the airport)), *rev'd,* 221 Ga. 135, 143 S.E.2d 737 (1965) (striking, for procedural reasons, certain allegations from the plaintiff's petition and finding, as a result, that the plaintiff did not state a cause of action because, *inter alia,* there was no allegation of necessity in the plaintiff's pleadings).

C. *Defendant's Assertion of Federal Immunity.*

 Defendant argues that even if Plaintiff's causes of action for inverse condemnation and nuisance are otherwise viable under Georgia law, Defendant is immune from them because they are preempted by federal law. The Aviation Safety and Noise Abatement Act, Pub.L. No. 96–193, 94 Stat. 50 (1980) (codified at 49 U.S.C.App. § 2101 *et seq.*) provides that no person "who acquires property or an interest therein after February 18, 1980" and who meets certain other requirements can recover damages because of noise attributable to an airport where the airport has complied with certain other requirements. 49 U.S.C.App. § 2107. Neither party alleges that the opposing party has failed to meet the "other" requirements. The only dispute is whether Plaintiff qualifies as a party "who acquires property or an interest therein after February 18, 1980."

Defendant argues that Plaintiff did not acquire the property in question or an interest therein until May 5, 1987. *See* Plaintiff's Response to Defendant's First Interrogatories (appended to Defendant's Motion for Summary Judgment at Exhibit H), 1(b) (responding thusly to an interrogatory requesting the "method and date Plaintiff acquired the interest" in the property: "Title was acquired by Continental American Life Insurance Company by deed under power dated May 5, 1987, and recorded in Deed Book 10793, page 434, Fulton County Land Records. On January 28, 1993, Continental American Life Insurance Company merged into Provident Mutual Life Insurance Company of Philadelphia with Provident Mutual Life Insurance Company of Philadelphia being survivor of said merger."). *See also id.* at 1(c) (listing the purchase date as May, 1987). Plaintiff responds by arguing that it actually acquired the property in April, 1977. Plaintiff's Response to Defendant's Motion for Summary Judgment, p. 31 (citing Exhibit A thereto). Exhibit A to Plaintiff's Response is a Deed Under Power of Sale dated April 7, 1977. The Deed Under Power of Sale also has markings indicating that it was subsequently filed with Fulton County on May 4, 1977. The Deed Under Power of Sale does not state the address of the subject property, and does not contain any reference to the Deed Book number and page which were referenced in Plaintiff's Response to Defendant's First Interrogatories.

Based on the evidence before it, and based on the threadbare explanations of that evi-

dence in the parties' briefs, the Court is unable to determine whether Plaintiff acquired the property or an interest therein after February 18, 1980. This is because (1) Plaintiff's incomplete evidence and Defendant's evidence are contradictory and (2) the parties have provided no discussion on the effect of Plaintiff's post–1980 merger on its ability to "acquire" property, or an interest therein, which Continental American Life Insurance Company may have purchased prior to 1980. In addition, it appears that the Aviation Safety and Noise Abatement Act may not deal with nuisance suits based on vibrations and dust, as opposed to noise. The Court, therefore, denies Defendant's motion based on federal immunity under 49 U.S.C.App. § 2107, but grants Defendant leave to refile a more developed motion on this ground.

### D. Plaintiff's Trespass Claim.

In Count IV of its Complaint, Plaintiff alleges that Defendant has committed a continuing trespass on its property. Defendant has not addressed this claim in its Motion for Summary Judgment. The Court, therefore, will not grant Defendant summary judgment on Count IV of Plaintiff's Complaint, but will grant Defendant leave to refile a motion addressing this claim.

### E. Plaintiff's Equal Protection Claims.

Plaintiff claims in Counts V and VI of its Complaint that Defendant's Noise Abatement Program violates the Equal Protection clauses of the United States and Georgia constitutions. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, ¶ 1. Article I, section 1, paragraph 2 of the Georgia Constitution contains a similar provision: "No person shall be denied the equal protection of the laws." The Georgia Supreme Court has held that the two equal protection clauses are "substantially equivalent." *Barge–Wagener Constr. Co. v. Morales,* 263 Ga. 190, 192, 429 S.E.2d 671, *cert. denied,* —— U.S. ——, 114 S.Ct. 579, 126 L.Ed.2d 477 (1993).

The Equal Protection Clause of the Fourteenth Amendment obligates a state, through its officials, to treat similarly situated persons in a similar manner. It forbids the application of a legitimate, fair policy in an uneven manner. *Yick Wo v. Hopkins,* 118 U.S. 356, 373, 6 S.Ct. 1064, 1072, 30 L.Ed. 220 (1886); *Chatterton v. Dutton,* 223 Ga. 243, 245, 154 S.E.2d 213, *cert. denied,* 389 U.S. 914, 88 S.Ct. 247, 19 L.Ed.2d 266 (1967). A governing authority violates the Equal Protection Clause when, through its officials, it draws distinctions regarding similarly situated persons without fairly grounding the distinctions in a legitimate governmental objective. *Zeigler v. Jackson,* 638 F.2d 776, 779 (5th Cir. Unit B, 1981). To succeed with an equal protection challenge, the plaintiff must show that the governing authority undertook the challenged action with an intentionally discriminatory purpose. *Washington v. Davis,* 426 U.S. 229, 239–42, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). Such proof requires more than a showing that an official was merely aware, or could have foreseen, that an action would adversely affect a particular classification of persons. Instead, a plaintiff must show "that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Massachusetts v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979).

When assessing equal protection challenges, a classification is tested under a standard of strict judicial scrutiny if it either operates to the disadvantage of a suspect class or interferes with the exercise of a fundamental right. *San Antonio Indep. School Dist. v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Ambles v. State,* 259 Ga. 406, 407, 383 S.E.2d 555, 557 (1989). The fundamental rights as identified by the United States Supreme Court fall into six substantive categories: (1) the right to freedom of association; (2) the right to vote; (3) the right to interstate travel; (4) the right to fairness in the criminal process; (5) the right to procedural due process; and (6) the right to privacy. 2 Ronald D. Rotunda & John E. Nowak, *Treatise On Constitutional*

*Law Substance and Procedure,* § 15.7 (2d ed. 1992); *Ambles,* 259 Ga. at 408, 383 S.E.2d 555.

■ If the classification or statute affects neither suspect class nor fundamental right, the classification need only bear a rational relationship to some legitimate state purpose. *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 488–89, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955); *Horton v. State Employees Retirement Sys.,* 262 Ga. 458, 459–60, 421 S.E.2d 703 (1992).

> When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations. Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude. Legislatures may implement their program step by step in such economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations. In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment.

*City of New Orleans v. Dukes,* 427 U.S. 297, 303–04, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976) (citations omitted). *See also Smith v. Cobb County–Kennestone Hosp. Auth.,* 262 Ga. 566, 569, 423 S.E.2d 235, 238 (1992) (finding that if there is any set of facts upon which a court may uphold as reasonable a government's distinction between two entities, the plaintiff's equal protection challenge must fail).

■ In its Response to Defendant's Motion for Summary Judgment, Plaintiff defends its equal protection claim on two separate grounds. First, Plaintiff claims that by acquiring property surrounding Plaintiff's property and demolishing the structures thereon, Defendant diminishes Plaintiff's use and enjoyment of its property and reduces the value thereof. Plaintiff argues that this interferes with the exercise of its fundamental rights because it represents a deprivation of property without due process. Second, Plaintiff claims that even if Defendant has not interfered with Plaintiff's exercise of its fundamental rights, Defendant is treating Plaintiff differently from how it treats others similarly situated, without any rational basis for the dissimilar treatment.

The Court must reject Plaintiff's first theory because Plaintiff did not suggest it in its Complaint. Plaintiff alleged in its Complaint that the operative discrimination was the fact that "Defendant City's program has been applied only to residential property and not to commercial property, thereby discriminating against Plaintiff in violation of the Equal Protection Clause." Complaint, ¶ 39. Nowhere is there any allegation or evidence that Defendant's Noise Abatement Program (as opposed to Defendant's operation of the Airport) has caused any interference with Plaintiff's property rights. Furthermore, there is no allegation or evidence that Defendant's Noise Abatement Program has resulted in a "deprivation of property" such that Plaintiff has acquired a right to procedural due process. In fact, Plaintiff does not even suggest how Defendant's purchases and alleged demolitions associated with the Noise Abatement Program can constitute a deprivation of property when they do not take Plaintiff's property or an easement thereon.

■ As for Plaintiff's second theory, Defendant argues that Plaintiff is not similarly situated to the eligible participants in the Program. According to Defendant, while eligible pieces of property consist of residential dwellings of three units or less which are occupied by the property owner, Plaintiff's property, in contrast, is strictly commercial

property. Plaintiff focuses instead on the fact that both it and the eligible participants are owners of property within the same Ldn area ("Level of Day/Night Noise" area) and argues that it is, therefore, similarly situated to the eligible participants.

Defendant argues next that even if Plaintiff and the eligible participants are similarly situated, there is a rational basis for treating them differently. This rational basis is that single family residences are more sensitive to noise than are commercial uses of property. Affidavit of Betty J. Hollaway (appended B to Defendant's Motion for Summary Judgment as Exhibit B), ¶¶ 8–10 & Exhibit A (Aircraft Noise Exposure Maps & Noise Compatibility Program ("Written Plan")) at pp. 36–39. *See also* Deposition of Betty J. Hollaway (cited by Plaintiff on pp. 37–38 of its Response to Defendant's Motion for Summary Judgment), pp. 50–54 (discussing the differences between single-family dwellings and commercial properties).

Even if Plaintiff and the eligible participants in the Noise Abatement Program are similarly situated, the Court must agree with Defendant that the classification (distinguishing between residential property owners and commercial property owners) is rationally related to a legitimate state interest. Accordingly, the Court grants Defendant's Motion for Summary Judgment on Plaintiff's Equal Protection Clause claims.

## IV. Defendant's Motion in Limine.

Defendant moves the Court to prohibit Plaintiff from introducing into evidence any maps, actions or related information described or used in the Airport's Noise Abatement Program. Defendant also moves the Court to prohibit Plaintiff from introducing into evidence any part of lists which Defendant has compiled of land uses compatible with the noise generated by the Airport's operation. In addition, Defendant moves the Court to prohibit Plaintiff from introducing into evidence any information contained in the environmental assessment for the Airport's proposed commuter runway concerning the proposed or anticipated use and effect thereof. Defendant contends it is entitled to this protection by virtue of the Aviation Safety and Noise Abatement Act.

The Act was designed to assist airports and surrounding communities in developing and instituting programs to reduce existing noncompatible land uses and to prevent future noncompatible land uses around airports. In furtherance of this goal, airport owners are to prepare noise impact maps and noise compatibility programs to guide them in addressing noncompatibility problems. Recognizing that the threat of having those maps and programs used as evidence against airport owners might deter owners from pursuing the established goal, the Act provides the following prohibition:

> No part of any noise exposure map or related information described in section 2103 of this title submitted to, or prepared by, the Secretary and no part of the list of land uses identified by the Secretary as land uses which are normally compatible with various exposures of individuals to noise shall be admitted as evidence, or used for any other purpose, in any suit or action seeking damages or other relief for the noise that results from the operation of an airport.

49 U.S.C.App. § 2106. *See also City of Atlanta v. Starke,* 192 Ga.App. 267, 269, 384 S.E.2d 419 (1989) (affirming a trial court's finding that evidence from a similar noise abatement program was inadmissible pursuant to O.C.G.A. § 24–3–37 because it concerned the City's efforts to compromise property owners' claims against it).

Plaintiff opposes Defendant's motion, arguing that because commercial property has been wholly excluded from the Airport's program and because Plaintiff's action against Defendant includes claims of discriminatory treatment, the Act's prohibition does not apply. The Court disagrees with Plaintiff's interpretation of the Act's scope. Notwithstanding this finding, because the Court has granted Defendant summary judgment on Plaintiff's Equal Protection and Fourteenth Amendment claims, Plaintiff's argument is moot. Accordingly, the Court grants Defendant's motion.

## CONCLUSION

The Court GRANTS IN PART and DE-NIES IN PART Defendant's Motion for Summary Judgment [19] and GRANTS Defendant's Motion in Limine [20].

Specifically, the Court DISMISSES Plaintiff's Fifth Amendment Claim (Count I), DISMISSES Plaintiff's requests for punitive damages and GRANTS summary judgment to Defendant on Plaintiff's Equal Protection claims (Counts V and VI). The Court also GRANTS summary judgment to Defendant on Plaintiff's inverse condemnation claim based on a physical taking (Count II), but DENIES summary judgment to Defendant on Plaintiff's inverse condemnation claim based on a taking by nuisance (Count II). In addition, the Court DENIES summary judgment to Defendant on Plaintiff's nuisance claim (Count III) and Plaintiff's trespass claim (Count IV). Finally, the Court GRANTS LEAVE to Defendant until fifteen days from the date of this Order to refile a motion on Counts III and IV. Plaintiff shall then have ten days from receipt of Defendant's refiling in which to file a response thereto. Remaining before the Court are Counts II, III and IV of Plaintiff's Complaint.

SO ORDERED.