90 F.3d 171
 26 Envtl. L. Rep. 21,585
 Richard SABLE, Personal Representative of the Estate of
Leonard Forster, Deceased, Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION, Chrysler Corporation, Ford Motor
Company, PPG Industries, Inc., The
Sherwin-Williams Company, TRW, Inc.,
Warner-Lambert Company,
Defendants-Appellees.
 No. 95-1735.
 United States Court of Appeals,
Sixth Circuit.
 Submitted June 13, 1996.
Decided July 23, 1996.
 
 Robert H. Golden (briefed), Lathrup Village, MI, for plaintiff-appellant.
 Kathleen McCree Lewis (briefed), Ted T. Amsden, Grant P. Gilezan, Dykema & Gossett, Detroit, MI, and Haskell Shelton, Jr. (briefed), Shelton & Bourne, Midland, MI, defendants-appellees.
 Before: KENNEDY and CONTIE, Circuit Judges; GRAHAM, District Judge.*
 KENNEDY, Circuit Judge.
 
 
 1
 Plaintiff Richard Sable, as administrator of the estate of Leonard Forster, appeals the District Court's denial of his motion to remand his suit to state court and summary judgment in favor of defendants. Plaintiff argues that his complaint belongs in Michigan courts because he alleged a purely state law claim of trespass to land; that his claim is not barred by a three-year statute of limitations because defendants' placement of hazardous waste on his property works a continuing trespass; and that the Court ignored material issues of fact regarding Leonard Forster's alleged consent to dumping. For the following reasons, we affirm.
 
 I.
 
 2
 Plaintiff brought suit in Wayne County Circuit Court on December 7, 1994 seeking, among other things, $1.5 billion as damages for defendants' breach of their duty to remove all contaminants dumped in plaintiff's industrial waste landfill over twenty-two years ago. Plaintiff also claims relief for loss of the use of the land resulting from deed restrictions on the use of the property for the next 10,000 years.
 
 
 3
 Plaintiff's decedent, Leonard Forster, owned the site during and after the 1956-74 operation of the G & H Landfill, where defendants, General Motors, Chrysler, Ford, PPG Industries, Sherwin Williams Co., and Warner-Lambert Co., allegedly deposited chemicals. All landfill activity at the site, which is located in Macomb County, Michigan, ceased in 1974.
 
 
 4
 On August 20, 1982, the EPA notified Forster of contamination problems at his landfill site. In September of 1983, the site was listed on the National Priorities List pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq, and the EPA began a Remedial Investigation and Feasibility Study for the site. Forster died in September of 1985. On April 30, 1986, the EPA sent his estate a letter informing it that it was considered a responsible party for the contamination at the site. On December 1, 1986, the EPA filed a petition against the Estate in probate court to seek reimbursement for its investigation costs at the site.
 
 
 5
 In 1988, the United States sued the Estate in federal court to recover some of its investigation costs. The Estate entered into a consent agreement with the EPA on April 20, 1992 in which it agreed to pay more than $200,000 for the EPA's cleanup efforts; the settlement also gave the EPA and responsible parties access to the site, and it imposed deed restrictions that limited access to and use of the site.
 
 
 6
 In separate consent agreements entered on June 30, 1993, defendants herein, among others, agreed to pay $40 million to design and implement a system to contain the chemicals on the site, rather than removing them. The agreement contains the same deed restrictions limiting access to and use of the site as were imposed by the consent agreement between the Estate and the EPA.
 
 
 7
 After plaintiff brought this action in state court, defendants removed the case to the United States District Court for the Eastern District of Michigan. On January 17, 1995, plaintiff filed a motion to remand the case to state court. The motion was denied on March 15, 1995. On April 7, 1995, defendants filed a motion for summary judgment on the grounds that plaintiff's claims were barred by the statute of limitations and that, since defendant had consented to the deposits in the landfill, there had been no trespass. The District Court granted defendants' motion on June 12, 1995. Plaintiff filed a timely notice of appeal.
 
 II
 
 8
 Plaintiff presents three arguments on appeal: that the District Court erred in denying its motion to remand the case to state court when plaintiff's complaint made no mention of the Constitution or any federal law; that the District Court erred in granting defendants' summary judgment motion on the ground that plaintiff's action was time barred when defendants' wrongs were of a continuing nature; and that the District Court erred in granting summary judgment on the ground that plaintiff Leonard Forster had consented to defendants' use of his land as an industrial waste dump when there were material issues of fact regarding Forster's alleged consent.
 
 
 9
 * The first issue is whether the District Court erred when it denied plaintiff's motion to remand the action to state court. "[A] defendant may not remove a case to federal court unless the plaintiff 's complaint establishes that the case 'arises under' federal law." Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal., 463 U.S. 1, 10, 103 S.Ct. 2841, 2847, 77 L.Ed.2d 420 (1983). Thus, we must consider whether plaintiff's complaint arose under federal law.
 
 
 10
 While the answer to this question depends solely on the plaintiff's complaint, "an action may be removed 'where the real nature of the claim asserted in the complaint is federal, irrespective of whether it is so characterized.' " Striff v. Mason, 849 F.2d 240, 244 (6th Cir.1988), quoting 1A J. Moore & B. Ringle, Moore's Federal Practice p 0.160[3.-3] (2d ed. 1987). Thus this Circuit rejected a plaintiff's argument that his complaint should not have been removed to federal court when it "made no references to the Constitution or any federal laws, and sought no relief under them" because "the complaint identified the [state law] right [plaintiff] seeks to enforce ... as being required by a [federal] court decree...." Striff, 849 F.2d at 244. Since plaintiff's claim "derived from the settlement of a federal action and ... the relief he sought had a direct and adverse action upon the federal court decree," id., we held, plaintiff's action arose under federal law and was properly removable. Id. at 244-45.
 
 
 11
 Here, plaintiff argues that since the complaint only seeks damages under state trespass law, and thus does not arise under federal law, it was not properly removed. Defendants counter that since plaintiff's claim is for breach of a duty to remove the contaminants, not simply a claim for damages, it arises under federal law. Defendants cite portions of plaintiff's complaint:
 
 
 12
 2. That each of the Defendants herein, jointly and severally, owed a duty to your Plaintiff's predecessor and by the continuing trespass of its noxious and toxic materials, owes a duty to your Plaintiff to remove that which he placed upon your Plaintiff's property, which duty to remove continues as does the continuing trespass of the Defendants herein.
 
 
 13
 3. That the Defendants breached the aforesaid duty to remove their offending noxious materials which breach is continuing and which breach constitutes negligent acts of the Defendants herein, jointly and severally.
 
 
 14
 4. That your Plaintiff has been damaged as a result of negligence of the Defendants and which damage is measured by the cost of removal of the noxious and toxic materials deposited by the said Defendants, jointly and severally, upon information and belief, at a cost of ONE AND ONE-HALF BILLION DOLLARS, Plaintiff's damages herein.
 
 
 15
 Count XVI, pp 2-4. We agree with defendants that asking for the damages from nonremoval of the chemicals (as measured by the cost of removal) rather than asking for removal of the chemicals themselves constitutes a distinction without difference. Understood in this way, plaintiff's complaint seeks a remedy that is in direct conflict with a federal consent decree. Defendants entered a consent agreement in which they agreed to spend $40 million to contain the chemicals on the property. The consent decree specifically rejects the option of removing the chemicals. Since plaintiff seeks relief that conflicts with the consent decree, plaintiff's claim arises under federal law. See Striff, 849 F.2d at 244-45.
 
 
 16
 Similarly, defendants point to other language in plaintiff's complaint indicating the suit's basis in federal, not state, law. In six counts of the complaint, plaintiff alleges that defendants' trespass
 
 
 17
 has caused your Plaintiff to sustain a total loss of use and enjoyment of the said property and a total loss of use and enjoyment of said property into the future for as long as man can measure time, but at least 10,000 years.
 
 
 18
 See Counts I, III-VII p 9; Count II, p 8. As defendants note, plaintiff's land is burdened in this way because of the consent agreements negotiated between the EPA and Leonard Forster and between the EPA and the various defendants. Since plaintiff is pursuing a state law claim for circumstances created by the federal consent agreement, plaintiff's claims arise under federal law. Thus the District Court did not err in denying plaintiff's motion to remand to state court.
 
 
 19
 Alternatively, the District Court's decision to keep plaintiff's case in federal court to protect the EPA-negotiated consent agreements is supported by the Court's powers under the All Writs Act, 28 U.S.C. § 1651(a). The Supreme Court has "repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued...." United States v. New York Telephone Co., 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977). Moreover, "[t]he power conferred by the [All Writs] Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice...." Id. at 174, 98 S.Ct. at 373. In Yonkers Racing Corp. v. City of Yonkers, 858 F.2d 855, 863-65 (2d Cir.1988), cert. denied, 489 U.S. 1077, 109 S.Ct. 1527, 103 L.Ed.2d 833 (1989), the Second Circuit held that district courts have residual jurisdictional authority under the All Writs Act to protect federal consent judgments by removing potentially inconsistent state law claims to federal court. A subsequent Second Circuit panel held that, under the All Writs Act, a district court may remove a state court action where "removal was necessary to protect the integrity of the Consent Decree" and where "the issues raised by the [state court action] cannot be separated from the relief provided by the consent decree." United States v. City of New York, 972 F.2d 464, 469 (2d Cir.1992), citing Yonkers Racing Corp., 858 F.2d at 865.
 
 
 20
 Plaintiff's requested relief would seriously interfere with provisions in the consent agreements under which Forster agreed that the land would not be used for 10,000 years and that the various defendants herein would contribute an aggregate amount of $40 million to contain the hazardous waste at the site. The District Court was well within its discretion when it denied plaintiff's motion to remand, for it had power under the All Writs Act to protect the federal consent agreements from conflicting state orders.
 
 B
 
 21
 The second issue is whether the District Court erred in granting defendants' motion for summary judgment. We review the District Court's decision de novo, using the same standard applied by that court. Harrow Products, Inc. v. Liberty Mut. Ins. Co., 64 F.3d 1015, 1019 (6th Cir.1995). Summary judgment is appropriate when
 
 
 22
 the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
 
 
 23
 FED.R.CIV.P. 56(c). Plaintiff argues that the District Court erred in granting summary judgment to defendants on the grounds that the statute of limitations had expired when defendants' wrongful conduct was of a continuing nature. Plaintiff also argues that the District Court's alternative ruling in support of summary judgment on the ground that Leonard Forster had consented to defendants' use of the land as an industrial waste dump was inappropriate when plaintiff could point to material issues of fact regarding Forster's knowledge of the hazardous nature of defendants' chemicals.
 
 
 24
 Michigan has a three-year statute of limitations for actions alleging trespass to land. MICH.COMP.LAWS ANN. § 600.5805(8) (West Supp.1996). A plaintiff's cause of action for a tortious injury to property accrues when all the elements of the cause of action have occurred and can be alleged in a proper complaint. Horvath v. Delida, 213 Mich.App. 620, 624, 540 N.W.2d 760 (1995), appeal denied, 550 N.W.2d 791 (1996). When a defendant's wrongful acts are of a continuing nature, however, the statute of limitations does not run until the wrong is abated. Id. at 626, 540 N.W.2d 760. "[A] continuing wrong is established by continual tortious acts, not by continual harmful effects from an original completed act." Id. at 627, 540 N.W.2d 760.
 
 
 25
 Plaintiff argues that its claim is not barred by the three-year statute of limitations because defendants' continuing trespass tolls the limitations period. Plaintiff quotes Oakwood Homeowners Ass'n, Inc. v. Ford Motor Co., 77 Mich.App. 197, 258 N.W.2d 475 (1977) for the proposition that pollution constitutes a continuing tort: "Therefore, in the normal pollution case, since the tort is committed every day, the cause of action will accrue up to the time of trial." Id. at 220 n. 7, 258 N.W.2d 475. Plaintiff also cites Michigan cases in which a permanent sewer line running under a plaintiff's house was held to be a continuing tort that tolled the limitations period. See, e.g., Defnet v. City of Detroit, 327 Mich. 254, 41 N.W.2d 539 (1950); Hodgeson v. Genesee County Drain Comm'r, 52 Mich.App. 411, 217 N.W.2d 395 (1974). Plaintiff argues that the permanent trespass of hazardous waste on its land is analogous to the permanent presence of the sewage lines held to constitute a continuing trespass in Defnet and Hodgeson.
 
 
 26
 Defendants argue that the limitations period has expired because the damage to the property is permanent and that the tort is not of a continuing nature because defendants' actions have ceased. We agree. The Michigan Court of Appeals' recent treatment of a plaintiff's argument that its claim was protected under the continuing-wrongful-acts doctrine is instructive. In Horvath v. Delida, 213 Mich.App. 620, 540 N.W.2d 760 (1995), defendants dredged a lake located near plaintiffs' property. After the lake had been dredged, water began to seep onto plaintiffs' land, destroying trees and ultimately entering plaintiffs' house. Horvath, 213 Mich.App. at 622, 540 N.W.2d 760. Plaintiffs argued that the continuing flooding of their property tolled the running of the limitation period until the time of the most recent injury. Id. at 626, 540 N.W.2d 760. The Court held that plaintiffs' claim was not tolled under the continuing-wrongful-acts doctrine because "a continuing wrong is established by continual tortious acts, not by continual harmful effects from an original, completed act." Id. at 627, 540 N.W.2d 760. Noting that defendants had last acted in 1982, when they dredged the lake, and that plaintiffs suffered noticeable damage as early as 1985, the Court held that plaintiffs' cause of action in July 1992 was barred by the three-year statute of limitations. Id. at 626, 628, 540 N.W.2d 760. Like the defendants in Horvath, the defendants' actions here are not of a continuing nature; defendants ceased dumping on plaintiff's land in 1974. Since there were no continuing tortious acts within three years from the date plaintiff filed the cause of action, only continual harmful effects, plaintiff's reliance on the continuing-wrongful-acts doctrine is misplaced.
 
 
 27
 Moreover, plaintiff's effort to construe Oakwood in support of its argument must also fail. In Oakwood, the plaintiffs had alleged that
 
 
 28
 defendants have concurrently emitted and continue to emit into the atmosphere noxious aerosols, gases and particulate matter of sufficient volume and regularity to befoul the air, damage plaintiffs' property and endanger the health of some class members.
 
 
 29
 Oakwood, 77 Mich.App. at 203, 258 N.W.2d 475. As Oakwood involved a case in which defendants continued to pollute, i.e. their actions were of a continuing nature, it is inapposite here, where the defendants did not continue to act. Similarly, Defnet and Hodgeson do not lend support to plaintiff's argument that the hazardous waste on its property is a continuing tort. Whereas in Defnet and Hodgeson the respective municipalities continued to pump raw sewage through the sewage lines, defendants here have not acted since 1974--the date on which dumping on plaintiff's land ceased. See Horvath, 213 Mich.App. at 627-28, 540 N.W.2d 760 (noting that Defnet and Oakwood involved defendants' continuing wrongful acts, not just continuing harms from a long since completed act).
 
 
 30
 By the time plaintiff's complaint was filed, it had been twenty years since any dumping had occurred. Moreover, even if Forster did not know in 1974 that the chemicals dumped on his land were hazardous, subsequent EPA actions gave Forster and his Estate notice many years ago of the elements of the claim brought by the Estate now. Since plaintiff did not bring its suit within three years after becoming aware of all the elements of its claim, the action is time-barred. Because summary judgment was appropriate on these grounds, we need not address the District Court's alternative ground, viz. that the Estate of Leonard Forster could not bring a claim for trespass to land when Forster consented to the very dumping alleged to have caused the trespass.
 
 III
 
 31
 For the foregoing reasons, we AFFIRM the District Court's rulings.
 
 
 
 *
 The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation