**PORTAGE COUNTY BOARD OF COMMISSIONERS, et al., Plaintiffs,**

v.

**CITY OF AKRON, Defendant.**

**No. 5:98–CV–1015.**

United States District Court, N.D. Ohio, Eastern Division.

July 21, 1998.

John Wesley Edwards, II, Jones, Day, Reavis & Pogue, Cleveland, OH, Jack A. Van Kley, Robert W. Hamilton, John White Edwards, Jones, Day, Reavis & Pogue, Columbus, OH, for Portage County Board of Commissioners, Charles Keiper, II, Kathleen Chandler, Christopher Smeiles, Cuyahoga Falls, City of, Kent, City of, Munroe Falls, City of, Silver Lake, Village of.

Leslie W. Jacobs, Robert Francis Ware, Jr., Thompson, Hine & Flory, Cleveland, OH, Cheri B. Cunningham, Max Rothal, City Of Akron, Law Department, Akron, OH, for Akron, City of.

## OPINION AND ORDER

GWIN, District Judge.

On May 27, 1998, Plaintiffs Portage County Board of Commissioners, et al.[1] ("Portage County") filed a motion to remand this cause to the Portage County Court of Common Pleas [Doc. 6]. Plaintiffs Portage County's motion to remand follows Defendant City of Akron's April 4, 1998 notice of removal to this Court pursuant to 28 U.S.C. § 1441.[2] Plaintiffs Portage County contend this case should be heard in state court because the issues presented are not governed by federal law and thus do not vest this Court with federal subject matter jurisdiction under 28 U.S.C. § 1331.[3]

In ruling on Plaintiffs Portage County's motion to remand, the Court first considers whether the claims in Portage County's complaint, on their face, invoke federal question jurisdiction. If not, the Court then considers whether the "real nature" of Plaintiffs Portage County's state claims "arise under federal law" such to require this Court's review.[4] To determine these issues, the Court evaluates whether Portage County's state claims specifically implicate either the Clean Water Act, 33 U.S.C. §§ 1251–1387; the Boundary Waters Treaty of 1909 between the United States and Canada; or the Water Resources Development Act of 1986, 42 U.S.C. § 1962d–20. Defendant City of Akron maintains that Plaintiff Portage County's claims "involve substantial questions of federal law" arising under the aforementioned provisions. As related, Defendant City of Akron contends that Plaintiffs Portage County purposefully omit reference to these federal laws in the complaint in an effort to avoid federal court jurisdiction.

For the reasons that follow, the Court concludes that Plaintiffs Portage County did not intend to adjudicate federal claims in this action. The Court also concludes that Defendant City of Akron fails to establish this Court's jurisdiction over this case pursuant to 28 U.S.C. § 1331. In this regard, Defendant City of Akron fails to show that Plaintiffs Portage County purposefully and artfully drafted their complaint to avoid federal court. Accordingly, the Court grants Plaintiffs Portage County's motion to remand this case to the Portage County Court of Common Pleas for all further proceedings.

### I. Facts

On April 17, 1998, Plaintiffs Portage County filed a lawsuit in the Portage County Court of Common Pleas against Defendant City of Akron.[5] The suit seeks to resolve

---

1. The collective plaintiffs in this action include The Portage County Board of Commissioners; Charles Keiper II, Commissioner; Kathleen Chandler, Commissioner; Christopher Smeiles, Commissioner; City of Cuyahoga Falls; City of Kent; Village of Munroe Falls; and the Village of Silver Lake.

2. Title 28 U.S.C. § 1441, states in relevant part:

   § 1441. Actions removable generally

   (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

   (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in inter-

   est properly joined and served as defendants is a citizen of the State in which such action is brought.

   (c) Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

   *   *   *   *   *   *

   28 U.S.C. § 1441(a), (b) and (c).

3. Title 28 U.S.C. § 1331 provides in its entirety:

   The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331.

4. *See Sable v. General Motors Corp.*, 90 F.3d 171, 174 (6th Cir. 1996).

5. *See Portage County Bd. of Comm'rs, et al. v. City of Akron*, Case No. 98CV00325, filed in the Por-

disputes between Plaintiffs Portage County and the City of Akron concerning the alleged improper diversion, removal, use and pollution of certain waters caused by Defendant City of Akron's operation of the Lake Rockwell Dam. The Rockwell Dam is located in Franklin Township, Portage County, Ohio. Construction of the dam created Lake Rockwell, a 770 acre reservoir with a storage capacity of 2,300,000,000 gallons of water.

Defendant City of Akron controls the flow and release of water behind the Rockwell Dam. Plaintiffs Portage County complain that the City's use and release of Lake Rockwell's waters causes irreparable damage to the several communities located downstream from the Rockwell Dam.[6] This damage allegedly includes injury to aquatic and marine life, contamination of watershed areas supporting community recreational facilities, and pollution of a well field supplying downstream residents with water for commercial, manufacturing and domestic use.

As related, Plaintiffs Portage County contend that, on occasions, the City rapidly releases large volumes of water from the dam, rather than steadily regulating the volume of water. These sudden releases of water damage the aquatic life downstream. Plaintiffs Portage County also argue that Defendant City of Akron's excessive retention of water impairs the use of these waters by Plaintiffs Portage County for boating and other purposes, thus diminishing Plaintiffs Portage County quality of life and economies. The County likewise contends that the City of Akron's restriction of water flow during periods of low precipitation results in stagnant, odorous, and algae-infested river water thus impairing water use.

Plaintiffs Portage County also complain that Defendant City of Akron's unreasonable operation of the Rockwell Dam and related water flow has increased the costs associated with Plaintiffs Portage County's Kent and Fishcreek downstream water treatment facilities. Plaintiffs Portage County seek compensatory, declaratory, and injunctive relief as a result of Defendant City of Akron's alleged actions.

## II. Claims

In their complaint, Plaintiffs Portage County make seven claims for relief: Count I claims damage for unreasonable use of water violating Ohio Rev.Code §§ 2721.02 and 2721.09; Count II seeks a declaration limiting Defendant City of Akron's use rights of these waters under 102 Ohio Laws 175 (the "1911 Statute"); Count III claims damages from Defendant City of Akron's impairment and obstruction of public access to navigable streams and lakes; Count IV claims damage for unreasonable operation of the Rockwell Dam as a public nuisance; Count V claims damage for unreasonable operation of the Rockwell Dam as a private nuisance; Count VI claims damage for negligent failure to exercise ordinary care in operating the Rockwell Dam; Count VII seeks declaratory and injunctive relief for diverting water without a permit violating Ohio Rev.Code § 1501.32.

These claims can be grouped into three categories: (1) claims that Defendant City of Akron has unreasonably diverted the flow of water from the Cuyahoga River (the "Diversion Claims"); (2) a claim that Defendant City of Akron failed to obtain a required permit from the Ohio Director of Natural Resources before diverting more than 100,-000 gallons of water per day from the Lake Erie Basin (the "DNR Permit Claim"); and (3) claims that Defendant City of Akron's operation of the Rockwell Dam causes pollution of the Cuyahoga River (the "Pollution Claims").

Considering Plaintiffs Portage County's claims, the Court decides whether the com-

---

tage County Court of Common Pleas on April 17, 1998.

**6.** In addition to the Rockwell Dam, the City of Akron constructed two other dams located upstream from Lake Rockwell. One is located on the East Branch of the Cuyahoga River near State Route 322 in Geauga County. Construction of this dam created the East Branch Reservoir. This reservoir covers 420 acres and has a storage capacity of 1,500,000,000 gallons of water. Another dam was also built upstream from Lake Rockwell on a tributary of the Cuyahoga River near State Route 422 in Geauga County. Construction of this dam created the Wendell R. LaDue Reservoir. This reservoir covers 1500 acres and has a storage capacity of 5,900,000,-000 gallons of water.

plaint presents issues "arising under federal law" to warrant federal jurisdiction.

### III. Standard of Review

██ If a federal court of competent jurisdiction determines that a case before it presents no basis for federal jurisdiction, the court has a duty to remand the case. 28 U.S.C. § 1447(c).[7] If a case is improperly removed to federal court pursuant to 28 U.S.C. § 1441, the court must remand the case back to the state court from which it was removed. 28 U.S.C. § 1447(d). Remand may be initiated *sua sponte* or upon motion of a party. *Wood v. Home Ins. Co.,* 305 F.Supp. 937, 938 (C.D.Cal.1969). If a federal court is in doubt of jurisdiction, such doubt must be resolved in favor of state court jurisdiction. *Cheshire v. Coca–Cola Bottling Affiliated, Inc.,* 758 F.Supp. 1098, 1102 (D.S.C.1990). Applying these standards, the Court considers whether Defendant City of Akron properly removed this case to federal court.

██ Any party to a lawsuit may remove a case to federal court if a proper basis for jurisdiction is provided. The party seeking removal bears the burden of establishing federal subject matter jurisdiction. *Ahearn v. Charter Township of Bloomfield,* 100 F.3d 451, 453–54 (6th Cir.1996).

Under Title 28, U.S.C. § 1331, jurisdiction is proper only if the underlying civil action "aris[es] under the Constitution, laws, treaties of the United States." 28 U.S.C. § 1331. In *Louisville & Nashville Railroad Co. v.*

*Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908), the United States Supreme Court described when a case "arises under" federal law:

> [A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution. It is not enough that the plaintiff alleges some anticipated defense to his cause of action, and asserts that the defense is invalidated by some provision of the Constitution of the United States.

*Id.* at 152, 29 S.Ct. 42.

██ The Supreme Court clarified *Mottley* in *Kerr–McGee Chemical Corp. v. Illinois,* 459 U.S. 1049, 103 S.Ct. 469, 74 L.Ed.2d 618 (1982). There, the Court describes the "well-pleaded complaint rule." The Court stated:

> It has been well established for many years that federal question jurisdiction is present "only when the plaintiff's statement of his own cause of action shows that it is based upon [federal] laws of the [federal] Constitution." (citation *Mottley* omitted). It is insufficient "that the defendant would set up in defense of certain laws of the United States." (citing *Mottley* at 153[, 29 S.Ct. 42] ).

*Id.* 459 U.S. at 1049, 103 S.Ct. 469.[8] The Court reiterated this view in *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 813, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), stating that "the mere presence of a

---

7. 28 U.S.C. § 1447 says in relevant part:

> \* \* \* \* \* \*

> (c) A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.
> (d) An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court

from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise.

> \* \* \* \* \* \*

28 U.S.C. §§ 1447(c) and (d) (emphasis added).

8. *See Caterpillar Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). In *Caterpillar,* the Supreme Court stated:

> The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly complaint. (citation omitted). The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.

*Id.* at 392, 107 S.Ct. 2425.

federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Rather, there must be a "substantial" federal issue raised. *Id.* at 813–34, 106 S.Ct. 3229. An action may be removed to federal court "where the real nature of the claim asserted in the complaint is federal, irrespective of whether it is so characterized." *Sable v. General Motors Corp.*, 90 F.3d 171, 174 (6th Cir.1996) (citations omitted).[9] See also *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 334 (6th Cir.1989) (Sixth Circuit reversing district court's denial of remand where Clean Air Act "did not displace state law" as a basis for removal, stating "removal can only be based on a theory advanced by the plaintiff.") (citation omitted).[10]

■ To decide whether a case has been properly removed to federal court, courts must look to the face of the complaint and determine whether the pleaders states a claim under federal law. Under the well-pleaded complaint rule, "[i]f a federal claim is presented by the complaint, there is federal question jurisdiction even if the complaint is phrased in state law terms; if however, the complaint presents only a state law claim, a federal defense does not create federal question jurisdiction." *Kerr–McGee Chemical Corp.*, 459 U.S. at 1049, 103 S.Ct. 469.[11]

■ Further, " '[t]he question whether a party claims a right under the constitution or laws of the United States is to be ascertained by the legal construction of its own allega-

tion, and not by the effect attributed to those allegation by the adverse party.' " *State of Tennessee v. Union & Planters' Bank*, 152 U.S. 454, 460, 14 S.Ct. 654, 38 L.Ed. 511 (citation omitted). "A defendant cannot create removal jurisdiction merely by raising a federal question as a defense." *Her Majesty the Queen*, 874 F.2d at 344 (citation omitted).

■ The well-pleaded complaint rule has two corollaries: (1) the doctrine of complete preemption, and (2) the artful pleading doctrine. The doctrine of complete preemption "permits removal when the state law the complaint is based upon has been totally preempted by federal law." *Wright v. Bond–Air, Ltd.*, 930 F.Supp. 300, 302 (E.D.Mich. 1996).[12] The artful pleading doctrine permits removal where it is obvious the plaintiff has "artfully" pled her complaint to avoid implicating federal law that could potentially govern her claims. *Id.* at 302.[13] Here, Defendant City of Akron argues for removal under the artful pleading doctrine, suggesting that Plaintiffs Portage County intentionally omitted reference to federal law in order to retain state court jurisdiction.

Considering these principles, the Court decides whether Plaintiffs Portage County artfully pleaded the complaint to avoid federal jurisdiction. In doing so, the Court determines whether "some substantial, disputed question of federal law is a necessary element" to any one of Plaintiffs Portage County's state law claims. *Her Majesty the Queen*, 874 F.2d at 339 (quoting *Franchise Tax Board*, 463 U.S. at 3, 103 S.Ct. 2841).

**9.** In *Sable*, the Sixth Circuit allowed removal of the case to federal court despite the plaintiff's argument that the complaint should not have been removed when "it made no references to the Constitution or any federal laws, and sought no relief under them. . . ." 90 F.3d at 174.

**10.** See also *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974) (stating to secure federal subject matter jurisdiction, the federal question "must be disclosed upon the face of the complaint, unaided by the answer." *Id.* at 127–28, 94 S.Ct. 1002)

**11.** See also *Collins v. Blue Cross Blue Shield of Michigan*, 103 F.3d 35, 36 (6th Cir.1996) (stating "[a] case arises under federal law when an issue of federal law appears on the face of a well-pleaded complaint.") (citations omitted).

**12.** See *Caterpillar*, 482 U.S. at 392–94, 107 S.Ct. 2425; *Strong v. Telectronics Pacing Systems, Inc.*, 78 F.3d 256, 259–60 (6th Cir.1996) (each discussing the "complete preemption doctrine").

**13.** See *Franchise Tax Board*, 463 U.S. at 22, 103 S.Ct. 2841. There, the Supreme Court described the artful pleading doctrine, as follows:

Although we have often repeated that "the party who brings the suit is master to decide what law he will rely upon," (citation omitted), it is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint. (citations omitted).
*Id.*

## IV. Discussion

Defendant City of Akron premises federal jurisdiction on 28 U.S.C. § 1441(b) which provides that "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties, or laws of the United States shall be removable without regard to the citizenship or residence of the parties...." 28 U.S.C. § 1441(b). Defendant City of Akron argues that Plaintiffs Portage County's claims, thought not pleaded as such, specifically arise under the Clean Water Act, the Boundary Waters Treaty of 1909 between the United States and Canada, or the Water Resources Development Act of 1986.

The Court first evaluates whether Plaintiffs Portage County's claims invoke federal jurisdiction under Water Resources Development Act of 1986.

### A. Water Resources Development Act of 1986.

■ Defendant City of Akron suggests Plaintiffs Portage County's claims, specifically Count VII alleging violation of Ohio Rev. Code § 1501.32 (the "DNR permit claim"), requires construction of federal law.[14] The City bases this argument on the fact that Ohio Rev.Code § 1501.32(C) incorporates by reference requirements of the Water Resources Development Act of 1996 ("Resources Act"). Defendant City of Akron maintains that because the Resources Act is a "necessary element" of the Ohio statute underlying the Plaintiffs Portage County's state DNR permit claim, the case belongs in federal court. The Court disagrees.

The Water Resources Development Act defines the procedure governing diversion of waters. It states in relevant part:

No water shall be diverted from any portion of the Great Lakes within the United States, or from any tributary within the United States of any of the Great Lakes, for use outside the Great Lakes basin unless such diversion is approved by the Governor of each of the Great Lake States (footnote omitted).

42 U.S.C. § 1962d–20(d). Congress enacted § 1962d–20(d) to ensure that any diversion of such waters was approved by representatives of the parties affected, since diversion of water from a tributary of the Great Lakes affects the holders of riparian rights along that tributary and the rights of persons living within the Great Lakes watershed.

To support its argument for federal jurisdiction, Defendant City of Akron relies upon Ohio Rev.Code § 1501.32, subsection (C), which makes reference to 42 U.S.C. § 1962d–20. Section 1501.02(C) states in relevant part:

... Before rendering a decision on the permit application, the director shall consider the concerns, comments, and recommendations of the other great lakes states and provinces and the international joint commission, and, in accordance with section 1109 of the "Water Resources Development Act of 1986," 100 Stat. 4230, 42 U.S.C.A. 1962 d–20, the director shall not approve a permit application for any diversion to which that section pertains unless that diversion is approved by the governor of each great lakes state as defined in section 1109(c) of that act.

Ohio Rev.Code § 1501.32(C). Defendant City of Akron suggests it is impossible to evaluate § 1501.02 without examining the federal statute that it embodies. This is not so.

The Resources Act was not intended to "preempt" any and all concurrent state laws that may be patterned after the Act, or incorporate by reference the Act's provisions. 42 U.S.C. § 1962d. Rather, the provisions of the Resources Act as incorporated into Ohio Rev.Code § 1501.32 only require courts to ensure compliance and implementation of federal law; the provisions do not require interpretation as to the breadth or meaning of that law. Further, there is nothing in either 42 U.S.C. § 1962d–20(d) or Ohio Rev. Code § 1501.32 to suggest that a state forum is any less capable than a federal court to adjudicate this matter. Reference to 42 U.S.C. § 1962d–20(d) within the text of Ohio Rev.Code § 1501.32 does not make the Act a

---

**14.** The City argues "[t]o determine whether the Ohio diversion statute has been violated, a court necessarily will have to construe 42 U.S.C. § 1962d–20(d)."

"necessary element" requiring Plaintiff Portage County's state claims to be heard in a federal forum.[15]

The Ohio legislature has developed its own statutory scheme to regulate water diversion. Simply because this scheme incorporates portions of the Resource Act, however, does not suggest that the Resources Act preempts this state law. After a review of both the Resources Act and the related provisions of § 1501.32, it is evident that the State of Ohio sought to implement legislative controls in this field. With this, the Court concludes that the Ohio Legislature's creation of § 1501.32 supports remanding this cause to state court.

The Court's conclusion in this regard is further supported by Plaintiffs Portage County's claim that it seeks only to determine whether Defendant City of Akron obtained the appropriate and required permits before diverting waters from the Cuyahoga River. As resolution of this question is squarely contemplated by Ohio Rev.Code §§ 1501.32(A) and (B), this issue is clearly one of state law and should be decided in the state forum.[16]

Having decided the reference to 42 U.S.C. § 1962d–20 within the provisions of Ohio Rev.Code § 1501.32(C) does not necessitate federal court review, the Court turns to whether Plaintiffs Portage County's claims create federal jurisdiction under the Boundary Waters Treaty of 1909.

**B. The Boundary Waters Treaty of 1909**

In its notice of removal, Defendant City of Akron contends federal jurisdiction can be predicated on The Boundary Waters Treaty of 1909 (the "Treaty") between the United States and Canada. Defendant City of Akron maintains the Treaty invokes jurisdiction because the Treaty governs diversion of boundary waters, including lakes and rivers along the boundaries between the United States and Canada. The City suggests the waters covered by the Treaty include the Cuyahoga River and the residual flow caused by operation of the Rockwell Dam. The Court disagrees.

The Boundary Waters Treaty of 1909 was enacted " 'to prevent disputes regarding the use of boundary waters' and 'to make provision for the adjustment and settlement' of questions 'between the United States and the Dominion of Canada involving the rights, obligations, or interests of either in relation to the other or the inhabitants of the other.' " *Miller v. United States*, 583 F.2d 857, 860 (6th Cir.1978) (quoting excerpts from Preamble to the Treaty, 36 Stat. 2448). To accomplish its goals, the Treaty created the International Joint Commission of the United States and Canada ("IJC"). By signing the Treaty, the United States and Canada agreed "to accept responsibility for the international repercussions of domestic water control projects." *Id.* at 861. According to the Treaty, any uses, obstruction, diversion to the defined "boundary waters" is subject to approval by the IJC.

To the extent Defendant City of Akron attempts to apply the Treaty to this case, the Court finds that Plaintiffs Portage County's claims against the City do not implicate approval by IJC. In short, the Treaty does not control this case. Although the Treaty by its terms does not "name the lakes and streams which fall within the terms of the treaty or within the jurisdiction of the IJC ...," it is clear from reading the Preliminary Article to the Treaty that tributary waters "which in their natural channels would flow into" boundaries waters do not fall within the Treaty's coverage.[17] The Preliminary Article provides as follows:

> if the only relief the plaintiff actually wants is based on state rather than federal law ... In such a case the invocation of federal-question jurisdiction is in bad faith and must fail. *Id.* (quoting *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1195 (7th Cir. 1987) (citations omitted)).

---

15. *See Bailey v. Johnson*, 48 F.3d 965, 968 (6th Cir.1995). Here, the Sixth Circuit states: "When federal law plays so minor a role, it does not suffice to establish federal jurisdiction." *Id.* at 968.

16. *See Bailey v. Johnson*, 48 F.3d at 968, stating: [A]nother facet of the well-pleaded complaint rule is that merely naming a federal statute in a complaint will not confer federal jurisdiction

17. *See Miller*, 583 F.2d at 860–61.

For the purposes of this treaty boundary waters are defined as the waters from main shore to main shore of the lakes and rivers and connecting waterways, or portions thereof, along which the international boundary between the United States and the Dominion of Canada passes, including bays, arms, and inlets thereof, but not including tributary waters which their natural channels would flow into such lakes, rivers, and waterways, or waters flowing from such lakes rivers, and waterways, or the waters of rivers flowing across the boundary.

Preliminary Article, Boundary Waters Treaty of 1909, 36 Stat. 2448. Because the Cuyahoga River is a tributary flowing into the boundary waters of the Lake Erie Basin, the Treaty is not controlling. Therefore, Defendant City of Akron's reliance on the Treaty to obtain federal jurisdiction is misplaced.

Further, the language of Article II of the Treaty supports this conclusion. Article II governs water use and diversion and states in pertinent part:

Each [party] reserves to itself *or to the several State Governments* on the one side and the Dominion or Provincial Governments on the other, as the case may be, ... the exclusive jurisdiction and control over the use and diversion ... of all waters on its own side of the line which in their natural channels would flow across the boundary or into boundary waters;
....

Boundary Waters Treaty of 1909, Art. II (emphasis added). This provisions clearly shows the drafters' intent to preserve state law controls. Because the Treaty itself reserves exclusive authority to control the use and diversion of tributary waters to the independent state governments, the Court concludes that Defendant City of Akron fails to establish federal jurisdiction as predicated upon the Boundary Waters Treaty of 1909 between the United States and Canada.

Having determined the facts of this case do not support this Court's jurisdiction under the Boundary Waters Treaty of 1909, the Court next evaluates Defendant City of Akron's jurisdictional arguments under the Clean Water Act.

### C. The Clean Water Act

■ Defendant City of Akron argues Plaintiffs Portage County's state law nuisance and related pollution claims implicate federal jurisdiction because the claims are preempted by the Clean Water Act. 33 U.S.C. §§ 1251–1387. To support this argument, the City cites the United States Supreme Court's decision in *International Paper Co. v. Ouellette,* 479 U.S. 481, 489, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987). Defendant City of Akron argues the *Ouellette* decisions recognizes Congress's intention that the Clean Water Act totally preempt "the field of water pollution." The City further suggests that to allow courts to apply state law in cases otherwise intended to be governed by federal law would result in a "chaotic regulatory structure that would subvert Congressional intent." [18]

Although this Court recognizes the significance of the *Ouellette* decision, the Court disagrees with the Defendant City of Akron's application here. The *Ouellette* Court addressed the preemptive effect of the Clean Water Act as related to state law nuisance claims that originate at "point source" located outside of an affected state. This typically arises in suits where a state affected by pollution flowing from another state seeks to abate the nuisance created by the out-of-state source. In these situations, the Clean Water Act preempts state nuisance laws since the cause of action has "interstate implications." However, because the instant case does not involve an out-of-state party

---

18. In *Ouellette,* the Supreme Court states:
  In determining whether Vermont nuisance law "stands as an obstacle" to the full implementation of the CWA, it is not enough to say that the ultimate goal of both federal and state law is to eliminate pollution. A state law also is preempted if it interferes with the methods by which the federal statute was designed to reach this goal.

*Id.* 479 U.S. at 494, 107 S.Ct. 805 (citation omitted). The Court continued, stating that "[a]pplication of an affected State's law to an out-of-state source also would undermine the important goals of efficiency and predictability in the permit system." *Id.* at 496, 107 S.Ct. 805.

complaining about the City's operation of the Rockwell Dam, the Clean Water Act's controls over interstate source points do not apply.

Furthermore, in *Ouellette*, the Supreme Court recognizes the Clean Water Act's preservation of state rights under the Act's saving clause. The Court states:

> The saving clause specifically preserves other state actions, and therefore nothing in the Act bars aggrieved individuals from bringing a nuisance claim pursuant to the law of the source State. By its terms the CWA allows States such as New York to impose higher standards on their own point sources, and in Milwaukee II we recognized that this authority may include the right to impose higher common-law as well as higher statutory restrictions.

*Id.* at 497, 107 S.Ct. 805 (citing *City of Milwaukee v. Illinois & Michigan,* 451 U.S. 304, 328, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981)).[19] Specifically, 33 U.S.C. § 1251(b) protects and preserves the rights of states to effectuate remedies for lawsuits not incompatible with the federal mandates of the Act.[20] The "saving clause negates the inference that Congress 'left no room' for state causes of action." *Ouellette,* 479 U.S. at 492, 107 S.Ct. 805. Plaintiffs Portage County's claims against Defendant City of Akron are not incompatible with the Clean Water Act and thus fall under the Act's saving clause.

Because the instant case does not involve conflicting standards of conduct between the nuisance laws of two or more states, and because the instant case does not present an issue where Ohio nuisance law interferes with or conflicts with the objectives or provisions of the Clean Water Act, Plaintiffs Portage County's nuisance claims are not preempted by the Clean Water Act. Accordingly, Plaintiffs Portage County claims do not require federal court review and are better suited to be resolved in the state forum.[21]

Further, as Ohio has a well-establish body of nuisance law, remanding this case to the Portage County Court of Common Pleas is consistent with Sixth Circuit precedent requiring remand "[w]hen the federal law plays so minor a role, it does not suffice to establish federal jurisdiction." *Bailey v. Johnson,* 48 F.3d 965, 968 (6th Cir.1995). Remanding this cause is further consistent with the Supreme Court's holding in *Great Northern Ry. Co. v. Alexander,* 246 U.S. 276, 282, 38 S.Ct. 237, 62 L.Ed. 713 (1918), declaring that a plaintiff is "the master of his claim," and if he chooses not to assert a federal claim, a defendant cannot remove the case on the basis of federal jurisdiction. See also *Caterpillar v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Franchise Tax Bd. of California v. Construction Laborers Vacation Trust,* 463 U.S. 1, 22–23, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Fayetteville Perry Local Sch. Dist. v. Reckers,* 892 F.Supp. 193, 197 (S.D.Ohio 1995).

### V. Conclusion

For the reasons herein, the Court concludes that Defendant City of Akron fails to show that Plaintiffs Portage County intentionally drafted its complaint to avoid federal

---

**19.** *See also Committee for the Consideration of the Jones Falls Sewage System v. Train,* 539 F.2d 1006, 1009, and n. 9 (4th Cir.1976) (finding that the Clean Water Act preserves common-law suits filed *within the source state*) (emphasis added).

**20.** Title 33 U.S.C. § 1251(b) sets forth the Clean Water Act's savings clause. It states:

> (b) Congressional recognition, preservation, and protection of primary responsibilities and rights of States
>
> It is the policy of the Congress to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution, to plan the development and use (including restoration, preservation, and enhancement) of land and water resources, and to consult with the Administrator

in the exercise of his authority under this chapter. It is the policy of Congress that the States manage the construction grant program under this chapter and implement the permit programs under sections 1342 and 1344 of this title. It is further the policy of the Congress to support and aid research relating to the prevention, reduction, and elimination of pollution, and to provide Federal technical services and financial aid to State and interstate agencies and municipalities in connection with the prevention, reduction, and elimination of pollution.
> 33 U.S.C. § 1251(b).

**21.** *See Her Majesty the Queen,* 874 F.2d at 340 (where federal and state claims are not identical, the artful pleading doctrine has been held not to apply) (citations omitted).

court jurisdiction. Having reviewed the "real nature" of Plaintiffs Portage County's claims, neither the Water Resources Act of 1986, the Boundary Waters Treaty of 1909, nor the Clean Water Act are "essential elements" to Plaintiffs Portage County's state law claims. As related, Plaintiffs Portage County motion to remand this cause is not barred by the artful pleading doctrine.

Because Defendant City of Akron fails to show that Plaintiff Portage County claims "arise under federal law," under the well-pleaded complaint rule, Defendant City of Akron's arguments for federal jurisdiction must be taken as defenses. Because federal jurisdiction cannot be predicated upon a defendant's raising certain laws of the United States as a defense, Defendant City of Akron's arguments for removal do not survive.[22] Accordingly, the Court grants Plaintiffs Portage County's motion to remand this cause to the Portage County Court of Common Pleas for all further proceedings.

IT IS SO ORDERED.

---

**22.** *See Kerr–McGee Chemical Corp. v. Illinois,* 459 U.S. 1049, 103 S.Ct. 469, 74 L.Ed.2d 618 (1982) (J. Blackmun).