**CITY OF TIPP CITY, et al., Plaintiffs,**

v.

**CITY OF DAYTON, Defendant.**

No. C–3–00–454.

United States District Court,
S.D. Ohio,
Western Division.

Sept. 24, 2001.

Joseph Moore, Columbus, OH, Michelle Kranz, David Zoll, Zoll & Kranz, Toledo, OH, for plaintiffs.

Larry James, Crabbe Brown & James, Columbus, OH, Julia McNeil, Walter J. Krygowski, City of Dayton, Law Dept., Dayton, OH, for defendant.

DECISION AND ENTRY OVERRULING PLAINTIFFS' MOTION FOR REMAND (DOC. # 10); PLAINTIFFS GRANTED FOURTEEN (14) DAYS FROM DATE TO FILE RULE 12(B)(1) MOTION; DEFENDANT GRANTED FOURTEEN (14) DAYS TO RESPOND TO PLAINTIFFS' SUBMISSIONS, IF ANY; DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. # 9) OVERRULED, WITHOUT PREJUDICE TO RENEWAL, SHOULD THIS COURT ULTIMATELY RULE THAT IT HAS SUBJECT MATTER JURISDICTION

RICE, Chief Judge.

This litigation concerns noise pollution caused by northeast departures of flights from the Dayton International Airport ("DIA"), located in Vandalia, Ohio. Plaintiff City of Tipp City is a municipality located in Miami County, Ohio, which lies northeast of DIA. Plaintiff Monroe Township is a township within Miami County, and it includes the City of Tipp City. Defendant City of Dayton is a municipality in Montgomery County, Ohio, which owns and operates DIA. Plaintiffs allege that, as the owner and operator of DIA, Defendant is responsible for the noise generated by airport operations.

In their Complaint (Doc. # 1), which was originally filed in the Common Pleas Court of Miami County and removed to this Court by Defendant, Plaintiffs set forth two causes of action against the City of Dayton, to wit: 1) a state law claim for nuisance (Count One), and 2) a state law tort claim, based on a breach of the City of Dayton's duty to engage in dialogue and to communicate with the communities who claim to be adversely affected by DIA (Count Two).

Pending before the Court are Plaintiffs' Motion for Remand (Doc. # 10) and Defendant's Motion for Judgment on the Pleadings (Doc. # 9). For the reasons assigned, Plaintiffs' Motion for Remand is OVERRULED. Defendant's Motion for Judgment on the Pleadings is OVERRULED, without prejudice to renewal, should this Court ultimately conclude that it has subject matter jurisdiction over this action.

## I. *Plaintiffs' Motion to Remand (Doc. # 10)*

■ The party seeking to litigate in federal court bears the burden of establishing the existence of federal subject matter jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). This is no less true where, as here, it is the Defendant, rather than the Plaintiffs, who seeks the federal forum. *E.g., Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453–54 (6th Cir. 1996). When the party asserting federal jurisdiction finds its allegations challenged, it must submit evidence substantiating its claims. *Amen v. City of Dearborn*, 532 F.2d 554, 560 (6th Cir.1976). The removing defendant's burden is to prove, by a preponderance of the evidence, that the jurisdictional facts it alleges are true. *Gafford v. General Electric Co.*, 997 F.2d 150, 158 (6th Cir.1993). The district court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990) (citations omitted). The court may consider such evidence without turning the motion into one for summary judgment. *Id.*

■ Where the Court elects to decide the jurisdictional issue on the written materials submitted, the removing Defendant is required only to make a *prima facie* case of jurisdiction. *Armbruster v. Quinn*, 711 F.2d 1332, 1335 (6th Cir.1983). In other words, it must only "demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." *Id.* (citations omitted). The Court must consider the pleadings and affidavits in the light most favorable to the removing Defendant. *Id.*

Plaintiffs present two arguments in favor of remand of this litigation to the state court. *First*, they contend that the City of Dayton's Notice of Removal is defective, because it fails to provide a short and plain statement of the grounds for removal. *Second*, they argue that the Complaint contains no basis for federal jurisdiction. Defendants counter that Plaintiffs' Motion for Remand should be overruled, because they did not oppose Defendant's removal of this action within twenty-one (21) days. In addition, they argue that Plaintiffs' state law claims are completely preempted, thus providing federal question jurisdiction. As a means of analysis, the Court will address the parties' procedural arguments, and then turn to their arguments regarding the basis for subject matter jurisdiction.

### A. *Procedural Requirements for Removal*

■ Defendant argues that Plaintiffs' Motion for Remand is untimely and, therefore, their Motion should be denied. The timeliness of a motion for remand is governed by 28 U.S.C. § 1447(c). That statute states, in pertinent part:

A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

*Id.* Plaintiffs moved for remand on December 8, 2000, nearly three months after Defendant removed this action from state court. Thus, Plaintiffs cannot challenge procedural irregularities in their Motion. *See Naragon v.*

*Dayton Power & Light Co.,* 934 F.Supp. 899 (S.D.Ohio 1996)(Merz, M.J.). They can, however, raise objections to the Court's exercise of subject matter jurisdiction.

In their Motion, Plaintiffs contend that the City of Dayton has failed to comply with the procedural requirements of 28 U.S.C. §§ 1441 and 1446 for removal. In particular, they argue that Defendant has failed to provide a short and plain statement, setting forth the basis for this Court's subject matter jurisdiction. Because Plaintiffs' Motion for Remand was filed more than thirty (30) days after removal, Plaintiffs have waived their objection to this alleged procedural defect.[1] Accordingly, the Court will not remand the present lawsuit on the basis of Defendant's allegedly defective Notice of Removal. Plaintiffs' Motion for Remand, on the ground that the Notice of Removal is procedurally defective, is OVERRULED.

Plaintiffs also have challenged Defendant's assertion that this Court has subject matter jurisdiction over this litigation. Accordingly, Plaintiffs' Motion to Remand, for lack of subject matter jurisdiction, is timely. Because this Court's exercise of subject matter jurisdiction is in question, the Court will now turn to that issue.

## B. *Federal Question Jurisdiction*

In its memorandum in opposition to Plaintiffs' Motion for Remand, the City of Dayton argues that Plaintiffs' nuisance claim is preempted by federal law. In particular, it states, citing *City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 633, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973), that "Congress expressly gave the FAA exclusive responsibility for regulating aircraft commerce and use of airspace." (Doc. # 13 at 3).

Thus, it argues, Congress has completely preempted this area of law, by virtue of the Airline Deregulation Act of 1978, 49 U.S.C. § 41713, thus rendering Plaintiffs' state law nuisance claim a federal claim.

## I. *Preemption*

■ There are two aspects to federal preemption of state law: conflict preemption and complete preemption. Conflict preemption arises where compliance with both federal and state law is a physically impossible, or "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941); *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984); *see Warner v. Ford Motor Co.,* 46 F.3d 531, 533 (6th Cir.1995)(en banc) (discussing difference between conflict and complete preemption). In contrast, "[i]f Congress evidences an intent to occupy a given field, any state law falling within that field is [completely] preempted." *Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Dev. Comm'n,* 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983).

■ In determining whether a court has federal subject matter jurisdiction, the court ordinarily begins by examining the plaintiff's well-pleaded complaint. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). The "well-pleaded complaint rule" provides that "the plaintiff is the master of the complaint, that [for removal to be proper] a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Warner,* 46

1. Even if the Court were to address this issue, it would not be inclined to remand on this basis. In recent years, the Sixth Circuit has expressed a reluctance "to interpret statutory removal provisions in a grudging and rigid manner, preferring instead to read them in a light more consonant with a modern understanding of pleading practices." *Klein v. Manor Healthcare Corp.,* 19 F.3d 1433, 1994 WL 91786 (6th Cir.1994); *Tech Hills II Assocs. v. Phoenix Home Life Mut. Ins. Co.,* 5 F.3d 963 (6th Cir.1993) (holding that defendant was properly granted leave to amend its removal petition to cure defect in allegation of diversity of

citizenship, even though thirty-day period under 28 U.S.C. § 1446(b) had expired); *Gafford v. General Elec. Co.,* 997 F.2d 150 (6th Cir.1993) (same). Where jurisdiction, in fact, exists, the Sixth Circuit has allowed amendment of the Notice of Removal to reflect it. *Id.* Accordingly, this Court will review the Complaint to determine if facts have been alleged to support a finding of subject matter jurisdiction. If such facts exist, the Court would be inclined to allow Defendant to file an amended Notice of Removal, curing its defective allegations.

F.3d at 533. If the plaintiff's claim arises under state law, the mere assertion of federal preemption as a defensive argument will not confer federal question subject matter jurisdiction. As stated by the Supreme Court in *Metropolitan Life Ins. Co. v. Taylor,*

> Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court. One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.

*Id.* at 63–64, 107 S.Ct. 1542.

■ To date, the Supreme Court has applied the doctrine of complete preemption to only a few federal statutes, most notably section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and section 1132(a) of the Employee Retirement Income and Security Act ("ERISA"). *Strong v. Telectronics Pacing Sys., Inc.,* 78 F.3d 256, 259 (6th Cir.1996); *Smith v. Provident Bank,* 170 F.3d 609 (6th Cir.1999); *see also El Paso Natural Gas Co. v. Neztsosie,* 526 U.S. 473, 484, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999) (Price–Anderson Act's unusual preemption provision resembles complete preemption doctrine).

The Supreme Court addressed a State's ability to regulate aircraft noise in City of *Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 633, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973). As summarized by the Sixth Circuit,

> In *Burbank,* the Supreme Court stated that in light of the pervasive nature of the scheme of federal regulation of aircraft noise, the FAA, in conjunction with the Environmental Protection Agency ("EPA"), has full control over aircraft noise, preempting state and local regula-

tion. *Id.* at 638, 93 S.Ct. at 1862. Therefore, the Supreme Court held that the City of Burbank could not use municipal curfews to impose noise regulations on aircraft operations.

When the Court in *Burbank* turned to the FAA regulations to determine federal pervasiveness in the regulation of aircraft noise, it discovered: (1) the existence of express language in a Senate Report, which stated that "States and local governments are preempted from establishing or enforcing noise emission standards . . . ."; (2) the existence of two agencies, the EPA and the FAA, with control over aircraft noise; and (3) the imposition of a variety of regulations governing noise by the Administrator of the FAA. *Id.* at 628–34, 93 S.Ct. at 1856–60. The Court in *Burbank* focused upon the fact that the Federal Aviation Act, the attendant regulations, the legislative history of the Act, the Noise Control Act, and the EPA clearly identified noise regulation as a field fully regulated by the federal government. The combination of these factors made it obvious that in regard to noise control, Congress intended to occupy the field of regulation. *Id.* at 638, 93 S.Ct. at 1862. Based on this evidence of pervasiveness, the Court in *Burbank* determined that aircraft noise was so comprehensively and strictly regulated by the federal government that it precluded enforcement of state or local laws on the same subject. *Id.* at 638–39, 93 S.Ct. at 1862–63.

*Gustafson v. City of Lake Angelus,* 76 F.3d 778 (6th Cir.1996). Although state and local governments are precluded from regulating aircraft noise, the Supreme Court did not preclude municipalities, acting as owners and operators of airports, from imposing noise regulations, "based on [their] legitimate interest in avoiding liability for excessive noise generated by the airports they own." [2] *Alas-*

---

2. The Court notes that it is frequently difficult to distinguish between a municipality imposing noise restrictions while acting in the capacity of owner or operator of an airport and a municipality imposing restrictions in an exercise of police power. A governmental entity, acting as an owner or operator, may do things that a governmental entity, acting as a governmental entity,

cannot. As noted by the Supreme Court, the "authority that a municipality may have as a landlord is not necessarily congruent with its police power." *Burbank,* 411 U.S. at 636, n. 14, 93 S.Ct. 1854. For example, a municipality may not impose curfews on a private airport to reduce noise. On the other hand, as an operator, it may restrict noisier aircraft from using its

*ka Airlines, Inc. v. City of Long Beach,* 951 F.2d 977, 982 (9th Cir.1991); *Burbank,* 411 U.S. at 635–36, n. 14, 93 S.Ct. 1854 ("We do not consider here what limits, if any, apply to a municipality as a proprietor."); *see Griggs v. Allegheny County,* 369 U.S. 84, 88–90, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962).

Through the Airline Deregulation Act of 1978 ("ADA"), Congress created further restrictions on State and local governments' ability to regulate airlines. The preemption provision of the ADA provides, in pertinent part:

> (b) Preemption.—(1) Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713. However, Congress further provided that a state or local government, acting in a proprietary (as opposed to governmental) manner, may continue to exercise their powers. In particular, § 41713(b)(3) states:

> (3) This subsection does not limit a State, political subdivision of a State, or political authority of at least 2 States that owns or operates an airport served by an air carrier holding a certificate issued by the Secretary of Transportation from carrying out its proprietary powers and rights.

Thus, in enacting the ADA, Congress maintained the ability of government airport operators to institute restrictions on noise at its airport. *See Alaska Airlines,* 951 F.2d at 982 ("A municipality may contract away its proprietorship rights, and thus lose the right to regulate noise ... The city's authority to control airport noise is not preempted by federal law."); *Provident Mut. Life Ins. Co. of Philadelphia v. City of Atlanta,* 864 F.Supp. 1274 (N.D.Ga.1994) (nuisance suit by citizen against owner and operator of airport for noise due to manner of airport's opera-

tion); *DiPerri v. Federal Aviation Administration,* 671 F.2d 54, 58 (1st Cir.1982) ("Noise complaints must be handled by local proprietors using their available authority to impose curfews, to ban certain aircraft, to negotiate alternate flights patterns acceptable to the FAA, to limit airport expansion, etc.").

Turning to Defendant's argument that Plaintiffs' nuisance claim is preempted, pursuant to § 41713, the critical issue is whether preemption under § 41713 results in Plaintiffs' state law claim being converted to a federal claim, thus allowing for removal on that basis. Herein, Plaintiffs allege that, in order to minimize the negative impacts of the noise generated by northeast departures, the City of Dayton (acting as DIA's operator) requested, and the Federal Aviation Administration agreed to adopt, Tower Orders, which govern and regulate the northeast departure of jet airplanes (Compl.¶ 9). To that end, Tower Order 7110.30A was issued on or about May 3, 1995 (*id.* ¶ 10), and was modified on August 14, 1995 (Tower Order 7110.30B) (*id.* ¶ 15). "The Tower Orders mandated that certain flights follow specifically designed flight corridors designed to limit the environmental and human impact from the noise and other pollution generated by planes." (*Id.* ¶ 16) Plaintiffs allege that DIA's Air Traffic Control Tower has failed to enforce these Tower Orders for Emery flights over Monroe Township and Tipp City (*id.* ¶ 19). They further allege that Defendant has intentionally prevented the implementation or enforcement of the Orders, and this lack of implementation has created a nuisance (*id.* ¶ 23).

Upon review of the relevant case law, the Court has found no basis for concluding that Plaintiffs' nuisance claim is completely preempted by federal law. In particular, the Court has not found authority which has interpreted the ADA preemption provision such that an ostensibly state law claim, *i.e.,* a nuisance claim, which falls within § 41713 is converted into a federal claim under the ADA.[3] Numerous courts have held that Fed-

---

airport during certain hours. *See National Helicopter Corp. of America v. The City of New York,* 137 F.3d 81 (2d Cir.1998).

**3.** The Court states no opinion, at this time, whether Plaintiffs' nuisance claim falls within § 41713(b)(1) and is, therefore, preempted by the ADA. That issue is raised as part of Defendant's

**394**

eral Aviation Act, as amended by the ADA, does not provide a private right of action. *See Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244 (6th Cir.1996)(no express or implied right of action against an air carrier for deceptive advertising under the Airline Deregulation Act of 1978); *Margolis v. United Airlines, Inc.*, 811 F.Supp. 318 (E.D.Mich.1993) ("[T]he Federal Aviation Act of 1958(FAA), as amended by the Airline Deregulation Act of 1978(ADA), 49 U.S.C.A.App. § 1301–1551, does not preempt traditional state law claims for negligence and does not provide for a private right of action for violations of FAA regulations."). Thus, a state law claim could not be converted into a federal claim under that statute.

Moreover, on its face, section 41713 appears akin to 29 U.S.C. § 1144, the preemption provision for the Employee Retirement Income Security Act ("ERISA"). As with § 41713 of the ADA, section 1144 of ERISA provides that ERISA "shall supersede ... State laws insofar as they ... relate to any employee benefit plan." While state law claims may be preempted by section 1144 due to conflict preemption, it has not been interpreted to allow for removal to federal court under the doctrine of complete preemption. As stated by the Sixth Circuit in *Warner*: "Section 1144 ... allows ERISA to preempt state laws when they 'relate to' matters governed by ERISA but does not create a federal cause of action for matters which only 'relate to' ERISA's field of concern. Thus, § 1144 preemption does not create a federal cause of action itself." 46 F.3d at 534. Likewise, although § 41713 would preempt state and local laws which relate to prices, routes, and services, due to conflict preemption, it does not appear to create a federal cause of action under the ADA due to complete preemption. Accordingly, the Court concludes that, although Plaintiffs' nuisance claim is based on a failure to implement FAA tower orders regarding noise abatement, that allegation does not render it a federal claim under the ADA. *See Provi-*

dent Mut. Life Ins. Co. of Philadelphia v. City of Atlanta, 864 F.Supp. 1274 (N.D.Ga. 1994) (nuisance suit by citizen against owner and operator of airport for noise due to manner of airport's operation). Because complete preemption is inapplicable, Defendant's argument that Plaintiffs' nuisance claim is preempted by the ADA is merely a defensive argument, which confers neither federal subject matter jurisdiction nor a basis for removal to this Court. *Cf.* 29 U.S.C. § 1144. Accordingly, this Court does not have subject matter jurisdiction due to complete preemption.

### 2. *"Arising Under" Federal Law*

■■■ Although Defendant's complete preemption argument is not persuasive, the Court feels compelled, due to the nature of Plaintiffs' pleadings, to address whether their nuisance claim arises under federal law, thus rendering federal subject matter jurisdiction proper.[4] As stated by the Supreme Court in *Merrell Dow Pharmaceuticals, Inc., v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986),

Article III of the Constitution gives the federal courts power to hear cases "arising under" federal statutes. That grant of power, however, is not self-executing, and it was not until the Judiciary Act of 1875 that Congress gave the federal courts general federal-question jurisdiction. Although the constitutional meaning of "arising under" may extend to all cases in which a federal question is "an ingredient" of the action, *Osborn v. Bank of the United States*, 9 Wheat. 738, 823, 6 L.Ed. 204 (1824), we have long construed the statutory grant of federal-question jurisdiction as conferring a more limited power. *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 494–495, 103 S.Ct. 1962, 1971–1972, 76 L.Ed.2d 81 (1983); *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 379, 79 S.Ct. 468, 483, 3 L.Ed.2d 368 (1959)....

Motion for Judgment on the Pleadings (Doc. # 9), which will not be ruled upon herein. For purposes of the Motion for Remand, the Court will assume, *arguendo*, that § 41713(b)(1) is applicable.

**4.** The Court notes that neither party has briefed this issue.

*Id.* at 807, 106 S.Ct. 3229. While it is clear that federal courts have subject matter jurisdiction over claims which are created by a federal statute, the Supreme Court has also recognized that a case may arise under federal law "where the vindication of a right under state law necessarily turned on some construction of federal law."[5]  *Franchise Tax Board,* 463 U.S. at 9, 103 S.Ct. 2841; *Merrell Dow,* 478 U.S. at 809, 106 S.Ct. 3229. As summarized recently by the Sixth Circuit,

> [The Supreme Court] clearly left open the possibility of federal jurisdiction even in the absence of an express or implied federal cause of action, if a substantial federal question of great federal interest is raised by a complaint framed in terms of state law, and if the resolution of that federal question is necessary to the resolution of the state law claim.

*Long v. Bando Mfg. of America, Inc.,* 201 F.3d 754, 759 (6th Cir.2000). Following this standard, the Court may have subject matter jurisdiction over Plaintiffs' claims if they require resolution of a substantial question of federal law.

▉ Again, the determination of whether a claim "arises under" federal law—or, as in the present case, whether removal jurisdiction existed—is "determined by reference to the 'well-pleaded complaint.' " *Merrell Dow,* 478 U.S. at 808, 106 S.Ct. 3229; *see also Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Franchise Tax Bd.,* 463 U.S. at 27–28, 103 S.Ct. 2841. After "[e]xamining only those allegations which are properly raised in a well-pleaded complaint, the court must then determine whether the substance of those allegations raises a federal question." *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914); *see Sable v. General Motors Corp.,* 90 F.3d 171, 174–75 (6th

Cir.1996) ("arising under" jurisdiction existed where plaintiff's state law tort claim was premised on defendants' breach of a duty created under federal law); *City of Chicago v. International College of Surgeons,* 522 U.S. 156, 164, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997)(federal court had jurisdiction over claim under Illinois Administrative Review Law when claim included various federal constitutional challenges to other state statutes and to how the administrative proceedings were conducted).

Herein, Plaintiffs' Complaint appears to raise a substantial question of federal law. To reiterate, Plaintiffs allege that the FAA issued Tower Orders 7110.30A and 7110.30B, which mandated that certain flights follow specifically designed flight corridors designed to limit noise and other pollution. DIA's Air Traffic Control Tower allegedly has failed to enforce these Tower Orders for Emery flights over Monroe Township and Tipp City (*id.* ¶ 19). Plaintiffs further allege that Defendant has intentionally prevented the implementation or enforcement of the Tower Orders. The merits of Plaintiffs' nuisance claim clearly raise the question of whether the Tower Orders have been implemented and, consequently, whether DIA is acting in accordance with those Orders. Although the parties have not briefed the issue of the legal effect of a tower order, it appears that they have the force of an FAA regulation. The Tower Orders at issue were approved by the FAA, they are printed on FAA letterhead, and are signed by Richard K. Petersen, Air Traffic Manager of the Dayton Air Traffic Control Tower, who the Court believes to be an agent of the FAA. Thus, Plaintiffs' Complaint indicates that their nuisance claim is premised on the City of Dayton's failure to comply with FAA requirements.[6]  *Sable v. General Motors Corp.,* 90 F.3d 171, 174–75 (6th Cir.1996) ("arising un-

---

5. To make clear, a state law claim which "arises under" federal law remains a state law claim. Unlike claims which are completely preempted, *i.e.,* claims within the purview of § 1132(a) of ERISA or § 301 of the Labor Management Relations Act, they are not converted into claims under a federal statute. Rather, they remain state law claims over which federal courts have original jurisdiction.

6. The Court notes that in its Motion for Judgment on the Pleadings, Defendant states: "The tower orders, attached to Plaintiffs' Complaint as Exhibits A and B, describe a 'preferential' runway use plan and noise abatement procedure. Nevertheless, there is no allegation that the preferential runway use plan and noise abatement procedures constitute a federal regulation, nor is there any mention of any federal regulation." (Doc. # 9 at 6).

der" jurisdiction existed where plaintiff's state law tort claim was premised on defendants' breach of a duty created under federal law); *City of Chicago v. International College of Surgeons,* 522 U.S. 156, 164, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997)(federal court had jurisdiction over claim under Illinois Administrative Review Law when claim included various federal constitutional challenges to other state statutes and to how the administrative proceedings were conducted). In light of the federal government's extensive control over aircraft noise regulation, *Burbank, supra,* the federal interest in this case is substantial. The Court, therefore, concludes that a *prima facie* showing has been made that Plaintiffs' nuisance claim, although stated in terms of state law, "arises under" federal law, and that this Court has subject matter jurisdiction over same. Accordingly, Plaintiffs' Motion for Remand (Doc. # 10) is OVERRULED.

Because neither party has briefed the issue of whether Plaintiffs' nuisance claim "arises under" federal law, the Court recognizes that Plaintiffs may wish to challenge this Court's subject matter jurisdiction on that basis. Accordingly, if Plaintiffs desire to make such a challenge, they are directed to file, within fourteen (14) days from date, a motion, pursuant to Rule 12(b)(1). Said motion should be thoroughly briefed and supported with affidavits or any other evidence, as deemed necessary by them. Defendant is granted fourteen (14) days to respond to Plaintiffs' submission, if any.

Defendant's Motion for Judgment on the Pleadings (Doc. # 9) is OVERRULED, without prejudice to renewal, should this Court ultimately rule that it has subject matter jurisdiction.[7]

For the foregoing reasons, Plaintiffs' Motion for Remand (Doc. # 10) is OVERRULED. Plaintiffs are directed to file a Rule 12(b)(1) motion, within fourteen (14) days from date, if they wish to challenge this Court's subject matter jurisdiction. Defendant is granted fourteen (14) days to respond to Plaintiffs' submission, if any. Defendant's Motion for Judgment on the Pleadings (Doc.

# 9) is OVERRULED, without prejudice to renewal, should this Court ultimately rule that it has subject matter jurisdiction.

---

7. Should Plaintiffs elect not to file a Rule 12(b)(1) Motion within fourteen (14) days, Defendant may renew its motion for judgment on the pleadings at that time.